*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0175p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

No. 06-5288

NORMAN BORHO,

*Defendant-Appellee.*

>

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 05-00068—Edward H. Johnstone, District Judge.

Argued: December 5, 2006

Decided and Filed: May 15, 2007

Before: BATCHELDER, GILMAN, and ROGERS, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Madison T. Sewell, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellant. Michael R. Mazzoli, COX & MAZZOLI, Louisville, Kentucky, for Appellee. **ON BRIEF:** Terry M. Cushing, Monica Wheatley, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellant. Michael R. Mazzoli, COX & MAZZOLI, Louisville, Kentucky, Rob Eggert, Louisville, Kentucky, for Appellee.

GILMAN, J., delivered the opinion of the court, in which BATCHELDER, J., joined. ROGERS, J. (pp. 11-13), delivered a separate dissenting opinion.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge. Norman Borho pled guilty to three counts of distributing child pornography in interstate commerce, in violation of 18 U.S.C. § 2252(a)(1), and to one count of receiving child pornography that had traveled in interstate commerce, in violation of 18 U.S.C. § 2252(a)(2). The applicable United States Sentencing Guidelines called for a sentence of between 210 and 262 months of imprisonment, but the district court imposed a sentence of only 72 months. On appeal, the government argues that the sentence should be vacated and remanded for resentencing because such a large downward variance from the Guidelines range in this case is substantively unreasonable. We agree. The judgment of the district court is therefore **VACATED** and **REMANDED** for resentencing for the reasons set forth below.

# I. BACKGROUND

Norman Borho is a lifelong resident of Louisville, Kentucky. He is a decorated war veteran, having received two bronze stars for distinguished service in the Vietnam War. After serving in the war, he returned to Louisville and found steady employment working with mainframe computers. He has been unemployed, however, since 2003.

Borho spent significant time in recent years caring for his sister, who had several forms of cancer that resulted in her death in early 2004. According to the Sentencing Memorandum prepared by his attorney, Borho "began viewing adult pornography over the internet due to his loneliness, coupled with his increased inability to function sexually as a result of his depression and other health issues." He eventually began viewing child pornography over the internet.

In December of 2004, Borho took his computer to a repair shop, requesting that the hard drive be replaced and that all of the files from the old hard drive be copied onto the new one. The computer technician, while copying Borho's files, observed what he believed to be images of child pornography. This caused the technician to notify the Louisville police. The police responded by obtaining a search warrant to seize the computer. After the investigating officers informed Borho that child pornography had been found on his computer, he immediately confessed.

A forensic analysis of Borho's computer, conducted by the Federal Bureau of Investigation (FBI), revealed that over 5,000 depictions of child pornography—specifically, 4,816 image files and 691 movie files—had been downloaded. The FBI case agent concluded that there were at least 77 images of prepubescent children and 21 images involving sadistic conduct. For example, one movie file found on Borho's computer was a seven-second video clip depicting an adult male anally raping a toddler. Another image depicts a young Asian female, whose wrists have been duct-taped to her ankles, being raped by an adult male. Moreover, the analysis showed that Borho had exchanged child pornography with others. Borho ultimately pled guilty to three counts of distributing child pornography and one count of receiving child pornography. He also voluntarily entered a sex-offender treatment program in May of 2005.

The probation officer's Presentence Report (PSR) calculated a base offense level of 22. Enhancements relevant under the Guidelines were added as follows: (1) a two-level enhancement because some of the images involved prepubescent children under 12 years of age, (2) a four-level enhancement because some of the images were sadistic in nature, (3) a two-level enhancement for the use of a computer, (4) a five-level enhancement for possessing more than 600 depictions, and (5) a five-level enhancement because the distribution of pornography was for a thing of value (gaining access to an internet chat room that permitted Borho to exchange images), although not for pecuniary gain. Finally, Borho received a three-level reduction for acceptance of responsibility. All of this resulted in a total offense level of 37. The district court accepted the probation officer's calculation of the recommended Guidelines range.

Borho's sentencing hearing was held in January of 2006. His therapist testified that Borho had made unusually strong progress in overcoming his addiction to pornography. After hearing additional testimony from members of Borho's family and closing arguments by the prosecution and the defense, the district court imposed sentence. The court began its analysis as follows:

> Some of the distinctions between ways of committing these offenses are recognized
> in the sentencing guidelines, but in this Court's experience, some of the distinctions
> are not comprehended . . . in the guidelines. For example, the guidelines recognize
> that a person who creates pornograph[ic] images [is] more dangerous than one who
> receives pornographic image[s]. However, the guidelines do not distinguish between

one who views pornography in private and one who has interactive behavior, such as telephone sex, e-mail sex and so on.

. . .

There is no evidence whatsoever that Mr. Borho has ever engaged in these interactive behaviors, and he committed his offense in the least personally engaged way possible. The Court believes this is an important fact.

Before imposing the 72-month sentence, the district court went on to say:

[Borho] had no criminal history, other than one conviction for DUI in 1996. He was a decorated Vietnam War veteran with a long and stable history and profitable employment. He suffers from a number of medical conditions, which contributed to his depression and offense. And there's no indication that he ever intended to have any physical contact with children, that the time period of the crime was relatively short, that [his] trading in child pornography is limited to websites on the internet, that the comprehensive sex offender risk assessment indicates he is amenable to treatment and poses low risk to public safety and low risk of re-offending.

The district court then concluded that a sentence of 210 months, being at the low end of the applicable Guidelines range, was too severe when all of the factors set out in 18 U.S.C. § 3553(a) were taken into account. On the other hand, it found that Borho was not the least culpable of all defendants convicted under these statutes. The court therefore declined to impose the statutory mandatory-minimum sentence of 60 months and instead imposed a sentence of 72 months' imprisonment, followed by 5 years of supervised release. The government has timely appealed the sentence on the basis that it is unreasonably low.

## II.    ANALYSIS

### A.    Standard of review

This court reviews sentences under a reasonableness standard. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines, which were previously mandatory, are now only advisory. *Id.* at 245. Accordingly, "a district court is permitted to vary from those guidelines in order to impose a sentence which fits the mandate of [18 U.S.C. §] 3553(a)." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006).

We review sentences for both procedural reasonableness and substantive reasonableness. *Id.* "A sentence may be procedurally unreasonable if the district judge fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *Id.* (quotation marks omitted). In addition, a sentence may be substantively unreasonable "when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *Id.* (brackets and quotation marks omitted).

### B.    Procedural reasonableness

The government concedes that the district court's sentence in this case was procedurally reasonable. In arriving at the sentence, the district court discussed the correctly calculated Guidelines range and balanced that calculation against the other § 3553(a) factors. The judge therefore "exercised the discretion that *Booker* [gave] him by independently considering and

faithfully attempting to apply" each of the sentencing factors in determining Borho's sentence. *See United States v. Davis*, 458 F.3d 491, 495 (6th Cir. 2006).

## C.     Substantive reasonableness

"Because the question at hand is whether the sentence is reasonable in light of the § 3553(a) factors, because one of those factors requires consideration of the guidelines sentencing range, § 3553(a)(4), and because the guidelines ultimately purport to account for most, if not all, of the § 3553(a) factors, . . . our review starts with the sentencing estimate provided by the Sentencing Commission for certain types of crimes and certain types of criminals." *Id*. at 496. The sentence imposed by a district court is therefore accorded a presumption of reasonableness when it is within the Guidelines range. *Id.*

### 1.     *Proportionality review*

Conversely, where the district court "independently chooses to deviate from the advisory guidelines range (whether above or below it), we apply a form of proportionality review: the farther the judge's sentence departs from the guidelines sentence[,] the more compelling the justification based on factors in section 3553(a) must be." *Id*. (quotation marks omitted). In *Davis*, a jury convicted the defendant on two counts of bank fraud. *Id*. at 492. The district court determined that the applicable Guidelines range was between 30 and 37 months of imprisonment. *Id*. at 492-93. After considering the § 3553(a) sentencing factors, the court imposed a one-day prison sentence. *Id*. at 493. In support of the lenient sentence, the court referred to Davis's age—he was 70 years old at sentencing—and the fact that the crimes for which he was convicted had occurred 12 years earlier. *Id*. at 494. It further noted that "the defendant's age and the length of time between the commission of the offenses and the date of sentencing warranted consideration after *Booker* even though they were not proper to consider as grounds for a downward departure from the guidelines." *Id*. (quotation marks omitted).

This court reversed, concluding that the extreme downward variance was not justified by extraordinary circumstances. *Id*. at 493. The court in *Davis* noted that age may well be a "legitimate basis for a variance," *id*. at 498, but held that "[i]n the end, the district court gave little, if any, discernible weight to the guidelines range and its explanations for deviating from that range fail to justify the magnitude of the variance." *Id*. at 499. Moreover, such an extreme variance, in the court's view, left "no room to make reasoned distinctions between Davis's variance and the variances that other, more worthy defendants may deserve." *Id*. The court then cited a number of cases from other circuits where less glaring, but still substantial, variances were vacated as substantively unreasonable. *See id.* at 499-500 (collecting cases).

Although *Davis* is now the controlling precedent in this circuit, we note that the Supreme Court currently has before it the question of whether requiring extraordinary circumstances to justify a sentence that varies substantially from the Guidelines is consistent with *Booker*. *See United States v. Claiborne*, 439 F.3d 479 (8th Cir. 2006), *cert. granted*, 75 U.S.L.W. 3246 (U.S. Nov. 3, 2006) (No. 06-5618). In *Claiborne*, the Eighth Circuit held that a defendant's 15-month sentence for possessing and distributing cocaine base was an unreasonable downward variance where the Guidelines called for a sentencing range of between 37 and 46 months in prison. 439 F.3d at 481. Claiborne's 15-month sentence amounted to a 60% reduction from the low end of the range. *Id*. The Eighth Circuit found that no extraordinary circumstances existed to justify such a variance, and that the defendant's lack of criminal history, as well as the small amount of drugs seized, were already taken into account by the Guidelines. *Id*.

Borho's applicable Guidelines range was between 210 and 262 months of imprisonment. The district court's sentence of 72 months represents a downward variance of 66% from the low end of that range. Under the proportionality review required by *Davis*, the district court's

justification for such an extreme variance must be correspondingly compelling. The government contends that there is no such compelling justification. It argues that the court (1) gave insufficient weight to the Guidelines range, (2) gave either too much or too little weight to various § 3553(a) factors, and (3) erred in giving substantial weight to the fact that Borho did not have actual sexual contact or interactive behavior with children.

## 2.       *Guidelines range*

The district court concluded that the existence of sadistic images on Borho's computer did not make his crime more serious because "sex between adults and children is inherently sadistic." That finding gives little or no weight, without an adequate explanation, to the express distinction that the Guidelines make among different types of pornographic images involving children. *See* U.S.S.G. § 2G2.2(b)(4) ("If the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, increase by 4 levels.") This court has likewise suggested that not all child pornography is equally sadistic. *United States v. Fuller*, 77 F. App'x 371, 384 (6th Cir. 2003) (holding that "images of sexual penetration of prepubescent girls . . . present [a] sufficient basis to find the material portrayed images of 'sadistic conduct' justifying the 4-level enhancement").

Although all images of child pornography are by nature disturbing, as a matter of common sense one would be hard pressed not to distinguish between an image where two prepubescent children are engaged in sexual conduct and a video clip depicting an adult male anally raping a toddler. This distinction between sadistic and nonsadistic conduct was made by the government when the Sentencing Commission added the four-level enhancement in 2003. *See United States v. Williams*, 411 F.3d 675, 679 n.2 (6th Cir. 2005).

In addressing this issue, the district court stated that it had "considered the United States' implication that the existence of sadistic images on Mr. Borho's computer make his crime more serious." The government's argument was not simply an "implication," however, but rather a part of the Guidelines that the court was required to consider in imposing a sentence. Here, although the court may have "considered" this Guideline in that it accepted the overall Guidelines calculation, it clearly disregarded the pertinent distinction that Congress made in distinguishing between sadistic and nonsadistic images in actually imposing Borho's sentence, with no explanation save a rather conclusory opinion that all sex between adults and children is inherently sadistic. *See Collington*, 461 F.3d at 808 (stating that a sentence may be substantively unreasonable where the district court fails "to consider pertinent § 3553(a) factors").

The government also argues that the district court had no basis for discounting the Guidelines enhancement regarding the number of images. In imposing the sentence, the district court stated that, as a result of the internet age, the "number of images has become considerably less useful as a factor in distinguishing between offenders." The Guidelines, on the other hand, call for a 5-level enhancement for the possession of more than 600 images. U.S.S.G. § 2G2.2(b)(7). Borho possessed more than 5,000 images, over eight times as many as required to trigger the enhancement. The record shows that the district court chose to disregard the number of images in arriving at Borho's sentence, much as it did in finding that all child pornography is inherently sadistic.

Section § 3553(a)(6) requires sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Yet the district court's sentence indicates that the court would cease to use either the number of images or the type of images as relevant sentencing factors. This leaves open the likelihood that a defendant, otherwise similarly situated to Borho, who possessed 50 nonsadistic images would receive the same sentence as someone who possessed 5,000 or even 10,000 images depicting sadistic behavior. Borho, moreover, did not argue that he downloaded images on just a

few occasions, or that he unintentionally downloaded a large number of images at one time by simply visiting a Web site. The absence of arguments of this nature suggests that Borho spent a substantial amount of time downloading illegal images. And a number of those images were found by the FBI forensic analyst to be sadistic.

The district court was thus correct in finding that Borho was not among the least culpable defendants convicted of these offenses. Adding only one year to the statutory mandatory-minimum sentence is simply not adequate in the present case to prevent sentencing disparities in the future. A defendant who possessed a single image of nonsadistic child pornography, for example, would be subject to a mandatory minimum of five years in prison—only one year less than what Borho received. *See* 18 U.S.C. § 2252(b)(1).

Although the Guidelines are now only advisory, *see Booker*, 543 U.S. at 245, the district court is required to at least consider them. *United States v. Gardner*, 417 F.3d 541, 543 (6th Cir. 2005) ("Following *Booker*, sentencing courts are no longer obligated to treat the United States Sentencing Guidelines as mandatory, but they must continue to give consideration to the Guidelines."). Here, the district court found two enhancements that cumulatively added nine offense levels to Borho's Guidelines calculation (the four-level enhancement for sadistic images and the five-level enhancement for the number of images) to be of no help in distinguishing among offenders and thus inapplicable in determining an appropriate sentence. The reasons given by the court for doing so, however, do not strike us as persuasive. Although the district court may vary from the properly calculated Guidelines range if it adequately justifies why the application of the enhancement to the particular defendant renders the Guidelines sentence too high under the circumstances, it may not disregard a sentencing enhancement simply because the court disagrees with that enhancement as a matter of policy. *See United States v. Funk*, 477 F.3d 421, 428-30 (6th Cir. 2007) (holding that the district court erred by "reject[ing] Congress's policy decision to prescribe harsher penalties for career offenders").

In analyzing the Guidelines, the district court also stated that they do not distinguish between one who views pornography in private and one who engages in interactive behavior, "such as telephone sex, e-mail sex, and so on." The court then gave weight to the fact that Borho never engaged in interactive behavior with children. But interactive behavior has little relevance to Borho's actual crime because the statute to which he pled guilty does not cover interactive behavior with children; it instead covers "activities relating to *material* involving the sexual exploitation of minors." 18 U.S.C. § 2252. The district court's line of reasoning has been rejected by several courts of appeals, albeit pre-*Booker*. *See United States v. Grosenheider*, 200 F.3d 321, 334 (5th Cir. 2000) (holding that the district court's finding that the defendant had no "inclination, predisposition, or tendency" to abuse a child did not "suffice to take his case out of the heartland" of child-pornography possession cases and thus warrant a downward departure); *United States v. Wind*, 128 F.3d 1276, 1278 (8th Cir. 1997) ("Because the Guidelines take into account the gravity of a possession offense as compared with more serious forms of exploitation, [the defendant] is not entitled to a downward departure on the ground that he did not commit, or have the tendency to commit, a worse crime."); *United States v. Barton*, 76 F.3d 499, 503 (2d Cir. 1996) (holding that a defendant who was convicted for the knowing receipt of child pornography under 18 U.S.C. § 2252(a)(2) was not entitled to a downward departure "merely because he did not commit an additional crime").

We agree with the reasoning of our sister circuits, and see nothing in *Booker* that diminishes the point made. In sum, both the Guidelines and the underlying statutes clearly distinguish between one who views pornography in private and one who engages in interactive behavior. *See* 18 U.S.C. § 2251 (criminalizing the sexual exploitation of children); 18 U.S.C. § 2251A (prohibiting the selling or buying of children with the intent or the knowledge that the children will be used to

portray sexually explicit conduct); *cf.* 18 U.S.C. § 2252(a)(2) (prohibiting the receipt of child pornography). The district court erred in opining to the contrary.

### 3.        *Other § 3553(a) factors*

A dramatic downward variance, however, is not per se or even presumptively unreasonable. *United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006) (holding that a sentence outside of the Guidelines—either higher or lower—is not "presumptively *un*reasonable") (emphasis in original). But the district court must offer a compelling justification based on the relevant § 3553(a) factors that is in proportion to the extent of the variance. *Davis*, 458 F.3d at 496-97 ( "[T]he question is whether extraordinary circumstances justify the full amount of the variance."). Although "there is no requirement that the district court engage in a ritualistic incantation of the § 3553(a) factors it considers," *United States v. McBride*, 434 F.3d 470, 474 (6th Cir. 2006), the district court's opinion "should be sufficiently detailed to reflect the considerations listed in § 3553(a)." *Id.* We also note that the guidepost for sentencing decisions post-*Booker* is the "parsimony requirement"—that the sentence imposed be "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2). *United States v. Ferguson*, 456 F.3d 660, 667 (6th Cir. 2006) (citation omitted). The purposes set forth in § 3553(a)(2) relate to the seriousness of the offense, respect for the law, just punishment, adequate deterrence, public safety, and rehabilitation of the defendant.

In arriving at Borho's sentence, the district court balanced the applicable Guidelines range, which is listed as a sentencing factor under § 3553(a)(4), against the nature and circumstances of the offense and the history and characteristics of the defendant as specified in § 3553(a)(1). The court noted that Borho had no criminal history, other than a 1996 conviction for driving under the influence, and that he was a decorated Vietnam War veteran with a stable employment history. It found "very significant that the psychologist's assessment was that Mr. Borho would have been horrified if anyone knew about his arousal in the presence of child pornography." The court also noted that Borho's "diabetes and major depression appear to have contributed to the development of his pornography addiction." Moreover, the court gave substantial weight to its conclusion that Borho "committed his offense in the least personally engaged way possible." Finally, the court stated that "the comprehensive sex offender risk assessment indicates he is amenable to treatment and poses low risk to public safety and low risk of re-offending." *See* 18 U.S.C. § 3553(a)(2)(C)-(D) (requiring that the court consider the need "protect the public from further crimes of the defendant" and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

Borho's sentence of 72 months' imprisonment represents an extraordinary variance of 66% below the bottom of the applicable Guidelines range. *See United States v. Meyer*, 452 F.3d 998, 1001 (8th Cir. 2006) (describing as "extraordinary" a 50% upward deviation from the presumptive Guidelines sentencing range). We fail to see how the facts relied upon by the district court present extraordinary circumstances justifying the large deviation in question. Borho's lack of prior criminal history, for example, was already taken into account in calculating his applicable Guidelines range by placing him in a criminal history category of I. *See also United States v. Ture*, 450 F.3d 352, 359 (8th Cir. 2006) (stating that the defendant's lack of criminal history, his expression of remorse for his crime, and his cooperation with prosecutors were "not so extraordinary as to warrant a no-prison sentence" for the defendant's conviction of tax evasion); *United States v. Cage*, 451 F.3d 585, 596 (10th Cir. 2006) (stating that, among other factors, the defendant's avoidance of continued drug use and lack of criminal history were not "factors . . . particularly out of the ordinary" that would warrant an extraordinary downward variance in the defendant's sentence).

The district court also gave substantial weight to Borho's adverse health conditions and the fact that he engaged in no improper interactive behavior with children. As noted by the Fifth Circuit

in *United States v. Duhon*, 440 F.3d 711, 713 (5th Cir. 2006), similar factors were taken into account by the lower court in the case before it where the defendant pled guilty to one count of possessing child pornography. The defendant's PSR recommended a Guidelines sentencing range of 27 to 33 months in prison, but the district court, after independently calculating the Guidelines range at 15 to 21 months, imposed a sentence of 60 months' *probation*. *Id*. at 714.

One factor that the district court took into account in reducing Duhon's sentence was his back injury. A policy statement contained in the Sentencing Guidelines, however, states that the defendant's physical condition is "not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.4. The Fifth Circuit reversed and remanded for resentencing, holding that if a district court "relies on any factors which are deemed by the Guidelines to be prohibited or discouraged[, it should] address these provisions and decide what weight, if any, to afford them in light of *Booker*." *Duhon*, 440 F.3d at 717 (quoting *United States v. Jackson*, 408 F.3d 301, 305 n.3 (6th Cir. 2005)).

In the present case, the district court concluded that Borho's diabetes and depression played a part in his addiction to pornography, and it took those factors into account in granting the downward variance. But like his medical condition of diabetes, Borho's depression is a mental or emotional condition that is not ordinarily a relevant ground for imposing a lower sentence under the Guidelines. U.S.S.G. § 5H1.3. The court failed to address the "discouraged" status of these factors. *See Koon v. United States*, 518 U.S. 81, 95 (1996) ("Discouraged factors . . . are those not ordinarily relevant in the determination of whether a sentence should be outside the applicable guideline range.") Although the district court has a "freer hand" to account for even discouraged factors under the Guidelines post-*Booker*, *see Davis*, 458 F.3d at 498, it must offer a compelling justification if those factors form the basis of a substantial variance from the recommended Guidelines range. In the present case, the district court failed to explain why Borho's diabetes or depression are extraordinary circumstances warranting a substantial downward variance. *See* U.S.S.G. § 5K2.0(a)(4) ("An offender characteristic or other circumstance identified in . . . the guidelines as not ordinarily relevant in determining whether a departure is warranted may be relevant to this determination only if such offender characteristic or other circumstance is present to an exceptional degree.").

The district court in *Duhon* also criticized the child pornography laws for failing to distinguish between those who passively download illegal material on the internet and those who physically molest children. *Duhon,* 440 F.3d at 717-18. But the Fifth Circuit rejected this criticism as unfounded because if the defendant had solicited children for sex, the Guidelines range would have increased substantially:

> The district court's view of Duhon's child pornography offense was misguided for several reasons. The court stated that the law fails to distinguish between simple possession of child pornography and trying to make contact with children to take advantage of and hurt them. The law, in fact, makes a drastic distinction.
>
> Congress established a series of distinctly separate offenses respecting child pornography, with higher sentences for offenses involving conduct more likely to be, or more directly, harmful to minors than the mere possession offense. Similarly, the guidelines clearly reflect consideration of whether and the degree to which harm to minors is or has been involved.

*Id*. at 718 (brackets and quotation marks omitted).

In this case, like *Duhon*, the district court gave great weight to the fact that Borho's conduct was largely passive and that there was no indication that he would ever pursue interactive behavior

with young children. It relied on this fact in granting the downward variance. As the Fifth Circuit in *Duhon* noted, however, Congress has clearly distinguished between passive behavior and interactive behavior in this area of the law. Borho's passive behavior, therefore, does not justify such a large downward variance.

The district court also gave substantial weight to the psychologist's assessment that Borho would have been horrified had anyone found out about his addiction to child pornography. But like the other factors discussed above, we do not believe this factor to be an extraordinary circumstance warranting a downward variance. We doubt that any sex offender would publicly express a fondness for pornographic images of children. The fact that Borho voluntarily sought treatment and has now realized the error of his ways is certainly laudable, and are proper factors for the district court to consider under § 3553(a)(1). These factors must be balanced, however, against the other statutory factors, including the seriousness of his offense, § 3553(a)(2)(A), "the kinds of sentences available," § 3553(a)(3), "the kinds of sentence and sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines," § 3553(a)(4), pertinent policy statements issued by the Sentencing Commission, § 3553(a)(5), and the need to avoid unwarranted sentencing disparities, § 3553(a)(6).

We do not believe that any single justification given by the district court for the downward variance in the present case, nor all of the justifications taken in the aggregate, rises to the level of extraordinary circumstances as required by *Davis*. Even taking into account the application of the parsimony requirement, our affirming the district court's judgment as is would leave too little room "to make reasoned distinctions" between Borho's variance and variances that other, "more worthy defendants may deserve." *Davis*, 458 F.3d at 499. Because the district court did not offer a compelling justification for imposing a sentence that it did, we conclude that the sentence was substantively unreasonable.

Whether Borho's sentence would still be deemed substantively unreasonable if *Booker* is eventually held to prohibit the requirement for a heightened justification of significant Guidelines variances is a much closer question. As a point of comparison, the Eleventh Circuit recently affirmed a sentence on similar facts that was also a substantial downward variance from the Guidelines under a standard reasonableness review not requiring a proportional justification. *United States v. Gray*, 453 F.3d 1323 (11th Cir. 2006) (affirming as reasonable the district court's imposition of a 72-month sentence where the defendant, a 64-year-old man with no applicable criminal history and who had a history of health problems, pled guilty to one count of possession and one count of distribution of child pornography where the Guidelines called for a sentence between 151 and 188 months of imprisonment).

The Seventh Circuit, on the other hand, which like our circuit requires extraordinary circumstances for a substantial variance, affirmed a defendant's sentence of 87 months for a conviction on one count of distribution of child pornography where the Guidelines called for a sentence between 108 and 135 months' imprisonment (a 19% downward variance from the low end of the applicable range). *United States v. Baker*, 445 F.3d 987 (7th Cir. 2006). This more modest variance was deemed reasonable because the district court's extended discussion of Baker's lack of criminal history, young age, religious background, employment history, and education level, as well as the special conditions imposed on Baker designed to reduce the risk that he would become a repeat offender, was deemed "sufficiently proportional to the district court's deviation from the Guidelines." *Id*. at 993.

In contrast to Borho's sentence, the downward variance in *Baker* was only 21 months. The district court here granted Borho a downward variance of 138 months, over six times that granted in *Baker*, with no correspondingly extraordinary justification. Although the sentence of 72 months that Borho received is certainly not insubstantial, one cannot look at the length of his sentence in

isolation. The fact that he received only 12 months more than the statutorily required mandatory minimum—for conduct warranting a Guidelines range of between 210 months and 262 months of imprisonment—is a further indication that the variance granted to Borho was not justified by any extraordinary circumstances. We conclude that the extreme nature of the district court's variance in the absence of extraordinary circumstances has resulted in an unreasonable sentence under this circuit's controlling precedent. *See Davis*, 458 F.3d at 499 (6th Cir. 2006) ("In the end, the district court gave little, if any, discernible weight to the guidelines range and its explanations for deviating from that range fail to justify the magnitude of the variance.").

The dissent, in contrast, would in effect do away with *Davis*'s requirement of showing extraordinary circumstances and would instead uphold as substantively reasonable any sentence imposed on Borho that ranged between the district court's 6 years and the Guidelines minimum of 17.5 years. Dissenting Op. at 13. But such a holding would effectively overrule *Davis*, an action that we have no authority to take. *See Salmi v. Sec'y of Health and Human Services*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel.").

Similarly, we believe that the dissent's statement that *Booker* "took away the power of the Sentencing Commission to determine the reasonableness of sentences within the statutory range, and gave it to the district judges" is too sweeping. Dissenting Op. at 12. The district court is not allowed, even post-*Booker*, to disregard the Guidelines, and neither are we. *United States v. Smith*, 474 F.3d 888, 892 (6th Cir. 2007) (holding that although district courts are to treat the Guidelines as advisory rather than mandatory as a result of *Booker*, "as a court of appeal, we still defer to these [G]uidelines since they reflect "nearly two decades of considered judgment about the range of appropriate sentences") (citation and quotation marks omitted).

To be sure, on remand the district court still retains ample discretion to grant a variance. Even though age and health are generally discouraged factors, a sentence of 210 months in Borho's case may well amount to a life sentence, and the district court would not be unreasonable in finding that length of time to be unduly harsh in light of the parsimony requirement. The narrow reason for remand here is that the extreme nature of the deviation, *without a correspondingly compelling justification*, resulted in a substantively unreasonable sentence. We thus leave it to the district court to explain what, if any, extraordinary circumstances justify a variance in this case and impose an appropriate sentence.

## III. CONCLUSION

For all of the reasons set forth above, we **VACATE** the judgment of the district court and **REMAND** for resentencing.

---
**DISSENT**
---

ROGERS, Circuit Judge, dissenting. I dissent because it was substantively reasonable for the district court to sentence a defendant to six years in prison for contributing in a small way to the market for pictures of despicable and revolting crimes against children. While the sentence is not what my colleagues or I, or the United States Sentencing Commission, would have imposed, our duty under *Booker* is nonetheless to uphold the trial court's sentence if it is reasonable.

The district court analyzed carefully and reasonably the § 3553(a) factors. The court especially focused on the first factor, "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553 (a)(1). In evaluating the nature and circumstances of the offense, the district court discussed the fact that Borho "committed his offenses in the least 'personally engaged' way possible." One might reasonably question whether the fact that Borho did not engage in any "interactive" behavior with children should be grounds for a reduced sentence, because such behavior would have constituted a separate crime. *See* Maj. Op. at 6.[1] But it is not necessarily unreasonable to take into account the absence of aggravating activity even if such aggravating activity might be separately criminal. Indeed, the Guidelines themselves enhance for related activity that is uncharged but may be criminal. *See, e.g.,* U.S.S.G. § 2K2.1 (enhancement of firearm possession sentence for possession "in connection with another felony offense"); *see also* U.S.S.G. § 3A1.3 (enhancement for restraint of victim); § 3C1.1 (enhancement for obstruction of justice); § 3C1.2 (enhancement for reckless endangerment during flight); *United States v. Comer*, 93 F.3d 1271, 1284 (6th Cir. 1996) (sentencing court may consider acquitted conduct or uncharged criminal conduct); *United States v. Aideyan*, 11 F.3d 74, 76 (6th Cir. 1993) ("A sentencing court may consider prior criminal conduct, whether or not charged."). It is correspondingly reasonable under § 3553 to give a lesser sentence where related criminal activity is not present.

The district court also took into account Borho's background as a decorated war veteran with a long and stable employment history and the absence of any prior criminal history. The court placed great weight on the life circumstances that contributed to Borho's commission of this crime. In particular, the court credited expert testimony concerning Borho's "addiction" to pornography, which began only very late in his life, was a result of major depression and diabetes, and was not accompanied by any other sexual addition.

The district court also considered "the kinds of sentence and the sentencing range" applicable to this crime. 18 U.S.C. § 3553 (a)(4). The court reasoned that the statute establishes a five-year minimum sentence, thereby indicating that Congress believed that five years was a sufficient sentence for at least some offenders. The district court noted the need to "avoid unwarranted sentence disparities, " 18 U.S.C. § 3553(a)(6), observing that, in the district court's judgment, the "circumstances of the offenses and the characteristics of the defendant" in this case were at "the lowest end" of these kind of cases. Thus, the district court reasoned that to enter a sentence within

---

[1]The majority reads the district court's reference to "*interactive* behavior such as phone sex, e-mail sex, and so on" to refer to the absence of any such interactive activity with children, which would constitute a separate crime. However, Borho suggests that this reference was to the absence of any such interactive activity at all, even with other adults, which would not constitute a separate crime. Borho's brief argues that the absence of such interactive conduct with other adults is relevant to Borho's sentence because experts have found that "the 'body of legitimizing stories' fostered by interaction among users is a key component in the perpetuation and growth of child pornography." When the district court's comments are read in this light, the majority's objection to this aspect of the district court's reasoning is largely inapposite.

the recommended Guidelines range, which was near the statutory maximum in this case, would leave little room to impose more severe sentences for more egregious defendants in the future. The district court also considered the absence of any need "to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2)(C), based on expert testimony that Borho was "very unlikely to seek out interpersonal expression of any sexual fantasy."

Finally, the district court considered the presence of sadistic images and the large number of images on Borho's computer. Taking account of these aggravating factors, the district court determined that Borho was not "the least culpable of all defendants convicted of violating these statutes," and was therefore not entitled to the statutory minimum.

To be sure, my colleagues and I, and the Sentencing Commission, would impose a different reasonable sentence. But I cannot conclude that the district court's sentence was not reasonable. Very different sentences can be reasonable, because different factors that go into sentencing can be weighed differently. There exists no Platonic form of the most perfectly reasonable sentence for a particular crime. Reasonable minds can come to very different conclusions as to how much punishment is warranted for a particular criminal act. This contrasts with determinations of fact, and also contrasts with determinations of law such as whether the elements of a crime have been met. Fact finders are at pains to ascertain the one true set of facts that everyone assumes exists. Similarly when courts ascertain the content of the elements of a crime, the underlying assumption is that certain activity is either criminal or it is not; it cannot be both.

Thus when Congress provides a range of punishments for a particular crime, there is no such thing as the "ideal" punishment that decision makers are trying to approach in determining the sentence. The factors that Congress requires us to consider can simply be weighed differently—actually very differently—by different reasonable people.

Under the pre-Guidelines system, sentencing judges made the sentencing determination, often based on judge-found facts, resulting in sentencing that may have been reasonable when viewed individually, but which might be very different from sentences given by other judges. The perceived disparity in such a system led to the Guidelines. Under the pre-*Booker* Guidelines system, Congress provided that the sentencing determination within the statutory range would be largely made by the Sentencing Commission, with only sharply curtailed discretion left to sentencing judges. Thus, for consistency purposes, Congress took the power to determine what was a reasonable sentence (within the statutory range) from individual sentencing judges and gave it to the Sentencing Commission.

In *Booker*, the Supreme Court invalidated the pre-*Booker* Guidelines system based on the Sixth Amendment right to a jury trial. Because the pre-Guidelines system—including sentencing based on judge-found facts—unquestionably complied with the Sixth Amendment, and because Congress unquestionably has the power to confine sentencing discretion if it wants to, invalidation of the Guidelines system required that some aspect of the pre-Guidelines system, not present in the Guidelines system, be deemed to have been necessary to the constitutionality of the pre-Guidelines system. That aspect was the power of individual sentencing judges, rather than Congress through the Sentencing Commission, to determine the reasonableness of sentences within statutory ranges.

There can be no blinking what the Supreme Court did in *Booker*. It took away the power of the Sentencing Commission to determine the reasonableness of sentences within the statutory range, and gave it to the district judges. It is neither appropriate nor advisable for the lower appellate courts now—without Supreme Court direction—to try to restore partially the power of the Sentencing Commission at the expense of sentencing court discretion. The genie cannot so easily be put back in the bottle.

Yet that is what we are attempting if we say that a sentence is less reasonable the farther it gets from the Guidelines range. It is true that we properly review sentences for reasonableness, and that sentencing courts must consider a properly calculated advisory Guidelines range. But it cannot be that a sentence is unreasonable purely because of the degree that it varies from the Guidelines range. Such a principle conflicts too directly with what the Supreme Court has told us: sentencing courts determine a reasonable sentence, not the Sentencing Commission. While this court in *Davis* relied in part on the distance between the imposed sentence and the Guideline range, we did not rely entirely on that distance. A significant factor in *Davis* was the fact that the one-day sentence in that case left "no room to make reasoned distinctions between Davis's variance and the variances that other, more worthy defendants may deserve." *United States v. Davis*, 458 F.3d 491, 499 (6th Cir. 2006). Here the district court expressly addressed this concern when it found that Borho was not the "least culpable" of defendants and imposed a sentence that was a full year above the statutory minimum, thus leaving room for meaningful distinctions for less culpable defendants in the future.

The district court expressly based its decision not to impose the statutory minimum sentence in this case on the fact that Borho possessed "sadistic" images and on the "number of images" on Borho's computer. The district court thus did not find those two enhancements "to be of no help in distinguishing among offenders and thus inapplicable in determining an appropriate sentence." Maj. Op. at 6. The district court did state that the enhancement for "sadistic" images is "*not particularly helpful* in distinguishing between offenders" because "sex between adults and children is inherently sadistic" and that the enhancement for the "'number of images' has become *a considerably less useful factor* in distinguishing between offenders." The difference between the majority's characterization of the district court's reasoning and the actual statements may be subtle, but it is significant in light of this court's recent holding in *United States v. Funk*, 477 F.3d 421 (6th Cir. 2007), which required reversal where the district court's decision was based on an "impermissible" policy disagreement with the Guidelines. Rather than sentencing Borho as if the "enhancement were not there," as did the district court in *Funk,* 477 F.3d at 425, the district court here increased Borho's sentence based on the Guidelines enhancements but concluded that the length of the sentence enhancements recommended by the Guidelines overstated the nature of Borho's individual actions. This kind of individualized consideration of aggravating factors is clearly consistent with the mandate of *Booker*.

Apart from the distance between the sentence imposed and the advisory Guidelines range, it simply cannot be said that the sentence imposed by the district court in this case was in any way unreasonable. It was not only procedurally reasonable as recognized by the majority, but also substantively reasonable in every respect, with the only arguable exception being its distance below what the Sentencing Commission would impose. The seventeen-year minimum that the Sentencing Commission would require is certainly reasonable given the heinous nature of the depicted child pornography. On the other hand, for the reasons carefully set out by the district court, six years is also reasonable. Under *Booker*, the district court and not the Sentencing Commission gets to make the call.