**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0647n.06
Filed: September 4, 2007

No. 06-1999

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| *Plaintiff-Appellant,* | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| **HAYWOOD MANUEL JOHNSON,** | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| *Defendant-Appellee.* | ) | |
| | ) | |

**Before: MARTIN and McKEAGUE, Circuit Judges; and GREER, District Judge.**[*]

GREER, District Judge. Haywood Manuel Johnson ("Johnson") pled guilty to a single count of possession of firearms after having been convicted of a felony, in violation of 18 *U.S.C.* § 922(g)(1). The applicable United States Sentencing Guidelines called for a sentence of 37 to 46 months of imprisonment. The District Court imposed a sentence of 24 months of probation. The United States has appealed, arguing that such a large downward variance from the advisory guidelines range in this case is substantively unreasonable. We agree. The judgment of the District Court is therefore **VACATED** and the case **REMANDED** for resentencing for the reasons set forth below.

---

[*] The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee, sitting by designation.

## **FACTUAL AND PROCEDURAL BACKGROUND**

On September 1, 2004, Genesee Township Police went to 2038 Daron Place, Flint, Michigan, to arrest Johnson on a state murder warrant. Johnson was taken into custody without incident and he and his wife consented to a search of their residence. Johnson advised the police of the presence of two firearms under the mattress in his bedroom. Found under the mattress was an unloaded 9 mm pistol with an obliterated serial number and a loaded 12 gauge, sawed off shotgun. Neither firearm had been manufactured in the State of Michigan. Johnson had previously been convicted in the Saginaw Circuit Court of the felony offense of attending an animal fight.

Johnson was found not guilty of the state murder charge on March 31, 2005, and was indicted on April 20, 2005, by the federal grand jury on charges based on the firearms found in his bedroom during the September 1, 2004 search of his residence. Johnson was arrested at his residence on the federal charges on April 21, 2005, by agents of the Bureau of Alcohol, Tobacco and Firearms. At the time of his arrest, Johnson was in possession of a loaded .25 caliber pistol, found in a nightstand next to his bed. He was not charged with possession of the third firearm.

After Johnson's guilty plea, a Presentence Report (PSR) was prepared. The PSR calculated a base offense level of 20 which was enhanced by two levels pursuant to USSG § 2K2.1(b)(1)(A) because three guns were involved and an additional two levels pursuant to USSG § 2K2.1(b)(4) because one firearm was stolen and had an obliterated serial number. Johnson received a three level reduction for acceptance of responsibility pursuant to USSG § 3E1.1. This resulted in a total offense level of 21. Johnson had one prior misdemeanor and one prior felony conviction

resulting in no criminal history points for a criminal history category I. This resulted in a guideline imprisonment range of 37 to 46 months. Neither party objected to the PSR and the District Court adopted the probation officer's calculation of the guidelines range.

Johnson's sentencing hearing was held on June 5, 2006. The District Court heard arguments and statements from counsel for the parties and the defendant's statement. The district court began its analysis of the case by noting that the case was "an unusual case." The court commented on the unusual nature of the predicate felony offense, *i.e.,* attendance at an animal fight, and expressed surprise that such conduct was a felony under Michigan law. The court observed that Johnson had been tried twice for murder and acquitted, did not have a serious criminal record, had a poor, but stable, childhood, was one of 15 children raised by his parents, had been married to the same woman for 48 years, had 5 children, one of whom was murdered, was 67 years of age and in ill health, had a prior history of cocaine use and that the offense was "a single instance of limited duration without significant planning involved." The court found that the offense of conviction was a serious offense but observed that it would not have been an offense at all if Johnson had not previously been convicted of attending a dog fight[1] and that a lengthy prison sentence was not necessary to afford adequate deterrence given Johnson's age or to protect the public from further crimes.

---

[1] This observation was legally incorrect. Possession of the sawed off shotgun and the pistol with an obliterated serial number was illegal even without Johnson's prior felony conviction. Possession of these weapons was charged in counts 1 and 2 of the indictment. These counts were dismissed pursuant to Johnson's plea agreement with the government.

The court then imposed a sentence of two years probation, imposed standard conditions of supervision, required participation in a substance abuse program as a special condition of supervised release and imposed a $100.00 mandatory assessment. The court summed up its reasons for imposing a sentence outside the advisory guideline range as follows in the judgment:

> The defendant is 67 years old. He has been married for 48 years and retired after 37 years at General Motors. He is in ill health. The defendant has no criminal history points, and his prior record is minimal and old. The guns were in his house, therefore not used. Based on these factors, the risk of recidivism is low.

The United States has timely appealed the sentence, arguing that it is substantively unreasonable.

## ANALYSIS AND DISCUSSION

This court reviews sentences under a reasonableness standard. *Rita v. United States*, 127 S. Ct. 2456, 2462 (2007); *United States v. Booker*, 543 U.S. 220, 262-263 (2005); *United States v. Harris*, 397 F. 3d 404, 409 (6th Cir. 2005); *United States v. Cage*, 458 F. 3d 537, 540 (6th Cir. 2006). In *Booker*, the Supreme Court held that the sentencing guidelines, which were previously mandatory, are now only advisory. *Booker*, 543 U.S. at 245. Accordingly, "a district court is permitted to vary from those guidelines in order to impose a sentence which fits the mandate of [18 U.S.C. §] 3553(a)." *United States v. Collington*, 461 F. 3d 805, 808 (6th Cir. 2006).

We review sentences for both procedural reasonableness and substantive reasonableness. *Id.* "A sentence may be procedurally unreasonable if the district judge fails to

consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *Id.* (quotation marks omitted). In addition, a sentence may be substantively unreasonable "when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to a pertinent factor." *Id.* (brackets and quotation marks omitted).

With regard to the substantive reasonableness inquiry, this Court has applied a "rebuttable presumption of reasonableness" to sentences falling within the applicable Guideline range. *United States v. Williams*, 436 F. 3d 706, 708 (6th Cir. 2006), *cert. denied* 127 U.S. 3043 (2007). The Court has, however, rejected the notion that a sentence falling outside the Guidelines range is presumptively unreasonable. *United States v. Ferguson*, 456 F. 3d 660, 664-65 (6th Cir. 2006). Since we are not reviewing a within–Guidelines sentence in this case, consideration of the nature or the effect of the presumption is unnecessary in this particular case. *See Rita*, 127 S. Ct. at 2462; *United States v. Liou*, 491 F.3d 334 (6th Cir. 2007).

The United States concedes that the district court's sentence in this case was procedurally reasonable but asserts that the sentence was substantively unreasonable "because the variance from the advisory guidelines range was very large and the court's justification was not compelling." (Brief of Appellant at 9). "Because the question at hand is whether the sentence is reasonable in light of the 3553(a) factors, because one of these factors requires consideration of the Guidelines Sentencing range, § 3553(a)(4), and because the guidelines ultimately purport to account

for most, if not all, of the § 3553(a) factors, . . . our review starts with the sentencing estimate provided by the Sentencing Commission for certain types of crimes and certain types of criminals." *United States v. Davis*, 458 F. 3d 491, 496 (6th Cir. 2006).

Where the district court "independently chooses to deviate from the advisory guidelines range (whether above it or below it), we apply a form of proportionality review: The farther the judge's sentence departs from the guidelines sentence[,] the more compelling the justification based on factors in § 3553 must be." *Id.* (quotation marks omitted).[2] In *Davis*, the defendant was convicted of two counts of bank fraud and his guidelines range of imprisonment was 30 to 37 months. *Id.* at 492 – 93. The district court imposed a sentence of one day of imprisonment, three years of supervised release and 100 hours of community service. *Id.* at 495. The district court referred to the defendant's age (70) and the fact that he had committed the offense 14 years earlier. *Id.* at 493, 495. Since the defendant was retired and no longer controlled a business, the court reasoned that he did not pose a danger to commit further acts of bank fraud. *Id.*

This court held the sentence to be substantively unreasonable, noting that the sentence entailed an "extraordinary variance" of 99.89 percent. *Id.* at 496. The district court determined that "the 14 – year gap between [the defendant's] crimes and his second sentencing hearing – does not support such a dramatic variance (and indeed may not support a variance at all)." *Id.* at 497. The court

---

[2] To the extent it could be argued that the recent decision in *Rita v. United States* affects proportionality review, a panel of this Court recently suggested that the answer is "no". *United States v. Poynter*, __ F.3d __, 2007 WL 2127353, (6th Cir. July 26, 2007). The issue has not been raised in this case and we need not address it further. The Supreme Court will consider the validity of proportionality review in its next term. *See United States v. Gall*, No. 06-7949.

also held that "age . . . may indeed be a legitimate basis for a variance," but "[t]o say that a district court may account for a defendant's age at sentencing, however, is not to say that [the defendant's] age (70) warrants a one–day sentence." *Id.* at 498. The court recognized as "most problematic" the fact that "the sentence represents the most extreme variance possible, leaving no room to make reasoned distinctions between [the defendant's] variance and the variances that other, more worthy defendants may deserve. *Id.* at 499.

This Court applied the holding of *Davis* in *United States v. Borho*, 485 F. 3d 904 (6th Cir. 2007). In that case, the defendant was convicted of three counts of distributing child pornography and one count of receiving child pornography. His computer contained over 5,000 images of child pornography. *Id.* at 906–07. His guidelines range was 210 to 262 months, but the district court granted a significant downward variance and imposed a sentence of 72 months. *Id.* at 906. The district court explained that its decision was based on the fact that the defendant:

> Had no criminal history, other than one conviction for DUI in 1996. He was a decorated Vietnam War veteran with a long and stable history and profitable employment. He suffers from a number of medical conditions, which contributed to his depression and offense. And there is no indication that he ever intended to have any physical contact with children, that the time period of the crime was relatively short, that [his] trading in child pornography is limited to web sites on the internet, that the comprehensive sex offender risk assessment indicates he is amenable to treatment and poses low risk to public safety and low risk of re–offending.

*Id.* at 907 (quoting the sentencing transcript).

This court reversed, holding that the defendant's lack of criminal history was already accounted for in the guidelines calculation and that defendant's lack of direct interaction with children

in committing the offenses did not justify the substantial downward variance because in fashioning the statutory offenses regarding possession of child pornography "Congress has clearly distinguished between passive behavior and interactive behavior." *Id.* at 912–914. This court also held that the defendant's ill health did not constitute a sufficiently "extraordinary circumstance" to justify the variance. *Id.* at 913. The court recognized the fact that the defendant "voluntarily sought treatment and has now realized the error of his ways is certainly laudable," but concluded that "our affirming the district court's judgment as is would leave too little room 'to make reasoned distinctions' between [the defendant's] variance and variances that other, 'more worthy defendants may deserve.'" *Id.* at 914 (quoting *Davis*, 458 F. 3d at 499).

The Sixth Circuit approved a large downward variance in two reported cases subsequent to *Davis.* [3] In *United States v. Collington*, 461 F. 3d 805, 807 (6th Cir. 2006), the defendant was convicted of possession of over 50 grams of crack cocaine with intent to distribute, being a felon in possession of a firearm, and possession of a machine gun. His guidelines range was 188 to 235 months, but the district court varied downward to impose a sentence of 120 months, with five years of supervised release. *Id.* This court held that the sentence was substantively reasonable, agreeing with the district court's determination that "a 120 month sentence is sufficient enough to reflect the crimes committed while allowing for the possibility that Collington may reform and after his release from prison, when he is in his mid--thirties, may go on to a productive life in society." *Id.* at 809. The

---

[3] Neither of these cases was cited for the relevant point by the defendant. Instead, defendant cited a district court case, *United States v. Kuhn*, 351 F. Supp. 2d 696 (E.D. Mich. 2005), in support of his argument that his sentence was substantively reasonable. (Brief of Appellant at 8).

district court had also considered "the early deaths of [the defendant's] parents and the mistreatment from his other relatives," as well as that the defendant had "'never been in custody for any substantial period of time'" and that "this incident was the first time that this quantity of drugs and guns had been found in [the defendant's] possession." *Id.* at 807–09.

In *United States v. Husein*, 478 F. 3d 318 (6th Cir. 2007), this Court expressly distinguished *Davis*. In *Husein*, the defendant was convicted of "conspiracy to possess and distribute ecstasy," and two counts of aiding and abetting and the distribution of ecstasy. *Id.* at 323. She was sentenced to one day in prison, though her guidelines range was 37 to 46 months. *Id.* at 333. The primary reason for the district court's guidelines based departure in that case had been "allowing *Husein* to provide the assistance that her father needed to survive." *Id.* at 332–33. The court addressed the *Davis* court's concern that Davis' one–day sentence left no room for greater variances for worthier defendants, concluding that "'more worthy defendants than Husein are difficult to imagine, short of those found to be not guilty," *Id.* at 334, although at the same time acknowledging that the case "approach[es] the boundary of the district court's broader resentencing discretion under *Booker. Id.* at 340.

The court distinguished Husein's situation from that of Davis, noting that her actions caused no immediate harm to the individuals involved;" that she accepted responsibility for her actions; that she expressed remorse for her conduct; and that her family circumstances were extraordinary. *Id.* at 334. The court also noted Husein's very significant work schedule, that her income is required for the family to pay basic expenses and the lack of alternate care for her sick father

and siblings. *Id.* at 323-324.

Finally, in *United States v. Fuson*, 215 Fed. App'x. 468, 469, 2007 WL 414265 (6th Cir. 2007), this Court affirmed a sentence of five years of probation for one count of being a felon in possession of a firearm, which represented a downward variance from a guidelines range of 24 to 30 months. The defendant in that case had been in possession of an antique handgun, it was purchased by the defendant's wife at an antique show, and she planned to resell the gun. *Id.* The defendant "allegedly expressed his objection to it and mentioned that he was not supposed to have weapons in the house due to his prior felony convictions. The gun nonetheless remained in the house for the next four months." *Id.* This Court approved the variance on the basis that:

> In contrast to the district court in *Davis*, which relied heavily (and nearly exclusively) on disfavored or improper sentencing factors (time lapsed before sentence, age of the defendant, and the white–collar nature of the crime), the district court here relied more on the "nature and circumstances" of the offense and properly considered "history and characteristics of the defendant" under § 3553(a)(1), noting certain particularly unique factors: [The defendant's] wife bought the gun, which was an antique; it was not bought for any criminal purpose; and [the defendant's] criminal record, comprised of relatively minor predicate offenses, was unblemished for the past seven years.

*Id.* at 475. Although *Fuson* is not a published case and the panel is therefore not bound to follow it, it provides a useful comparison to the instant case, given its facts.

The facts of this case appear to clearly distinguish it from *Collington* and *Husein*. The primary justification for the downward departure in *Husein* was that the defendant was indispensable to the support of her family. Here, it does not appear from the record that Johnson's family circumstances are unique, *i.e.,* that Johnson is required to provide necessary care to other family

members, or that his income would cease if he is incarcerated, making it impossible for his spouse to pay for food, utilities or the mortgage. In *Collington*, this Court approved a variance downward because of defendant's difficult past home life, minor criminal history and potential for reform. Johnson, on the other hand, enjoyed a stable, although poor, childhood and a stable married life. Johnson's possession of the third, uncharged firearm also calls into question his potential for reform. Moreover, the sentence in *Collington* represented a 36% downward variance from the guidelines range, which, while significant, is a fundamentally different matter from the extraordinary departure to probation in the instant case.

The situation in this case also is materially different from the situation in *Fuson*. In that case, the firearm was an antique purchased by Fuson's wife, was not purchased for a purpose which exposed the public to danger and, had the firearm been a year older, the firearm would have been an antique firearm under 18 U.S.C. § 921 and Fuson would not have been prosecuted. Here, the firearms were apparently possessed because of their dangerous nature to provide "protection" because of threats and acrimony related to Johnson's murder trial. One of the firearms possessed by Johnson was stolen and had an obliterated serial number and the other was a sawed off shotgun. Both were illegal to possess even without Johnson's prior felony conviction. And the third firearm, even though not acquired personally by Johnson, was possessed by him after the seizure by the officers of the first two.

Johnson's guidelines range was from 37 to 46 months imprisonment. The district court's sentence represents a downward variance of 100% from the guideline range. *Davis* requires that such an extreme downward variance be based on correspondingly compelling justification. The

district court must offer a compelling justification based on the relevant § 3553(a) factors that is in proportion to the extent of the variance. *Davis*, 458 F. 3d at 496-97 ("[T]he question is whether extraordinary circumstances justify the full amount of variance.") The district court gave substantial weight to Johnson's age, stable marriage, work history, health and lack of recent criminal history. We fail to see how these facts establish extraordinary circumstances which justify the large downward variance in this case.

Johnson's lack of recent criminal history was fully taken into account in calculating his guidelines range. Although Johnson had one prior misdemeanor conviction and one prior felony conviction, he received no criminal history points for these convictions; *see USSG* § 4A1.2(e)(3), resulting in a criminal history category of I. Johnson's health and age, although "not ordinarily relevant" under the guidelines, *see USSG* § § 5H1.1 and 5H1.4, may nevertheless "be a legitimate basis for a variance" after *Booker*. *Davis*, 458 F. 3d at 498. The district court, however, never discussed the "discouraged" status of these factors, *see Koon v. United States*, 518 U.S. 81, 95, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996) ("discouraged factors . . . are those not ordinarily relevant in the determination of whether a sentence should be outside the applicable guideline range"), and failed to explain why Johnson's age or health are extraordinary circumstances warranting a substantial downward variance. *See Borho*, 485 F. 3d 904 (6th Cir. 2007). While Johnson has health problems, they appear to be of the kind expected with a 67 year old man and not extraordinary. The district court also did not find that Johnson's medical conditions could not be adequately treated in prison or would pose an undue hardship for him if incarcerated. Likewise, Johnson's 48 year marriage, 37 year tenure

at General Motors and the raising of five children are commendable but these circumstances do not appear to be extraordinary.

The district court noted that "the guns were in his house therefore not used" and that there was no evidence that Johnson had taken the firearms from his house. The district court did not discuss the relevance of such a finding or how it related to any of the § 3553(a) factors. Similarly, the court made note of the fact that Johnson had twice been charged with murder and acquitted; however, once again, the court did not further discuss this fact or how it related to the need for the sentence imposed. Worthy of mention also is the district court's finding that the risk of recidivism is low based on these factors, a finding which appears to be contradicted by the record in this case. The record does not reflect consideration of the seriousness of firearms offenses, especially under the facts of this case which reflect that Johnson was in possession of a third loaded firearm when arrested for possession of the two illegal firearms referenced in the instant indictment. Moreover, Johnson twice tested positive for cocaine during his pretrial release, and the police found marijuana cigarettes along with the third firearm when they arrested Johnson for the instant offense.

In the end, the district court appears to have given little, if any, weight to the guidelines range or to explain how the sentence imposed furthers the goal of imposing "a sentence sufficient, but not greater than necessary, to [reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

. . ." ] 18 *U.S.C.* § 3553(a). The district court also did not articulate how this sentence avoided unwarranted sentencing disparities. *See* § 3553(a)(6).

This Court takes no position on what an appropriate sentence in this case might be and notes that on remand the district court still retains ample discretion to grant a variance. The district court may well find, on remand, that the term of imprisonment suggested by the guidelines is unduly harsh in light of the parsimony requirement . The narrow reason for remand here is that the extreme nature of the deviation, without a correspondingly compelling justification, resulted in a substantively unreasonable sentence. We thus leave it to the district court to determine what, if any, extraordinary circumstances justify a variance in this case and to impose an appropriate sentence.

## CONCLUSION

For all of the reasons set forth above, we vacate the judgment of the district court and remand for resentencing.