RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0170p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

No. 06-5579

ANDY CHERRY,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 05-00093—John G. Heyburn II, Chief District Judge.

Argued: March 9, 2007

Decided and Filed: May 11, 2007

Before: DAUGHTREY and ROGERS, Circuit Judges; OBERDORFER, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Madison T. Sewell, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellant. Michael R. Mazzoli, COX & MAZZOLI, Louisville, Kentucky, for Appellee. **ON BRIEF:** Terry M. Cushing, Monica Wheatley, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellant. Michael R. Mazzoli, COX & MAZZOLI, Louisville, Kentucky, for Appellee.

---

**OPINION**

---

ROGERS, Circuit Judge. The Government appeals the below-Guidelines sentence that the district court imposed on defendant Andy Cherry as a result of Cherry's guilty plea to four counts of distributing child pornography, nine counts of receiving child pornography, and one count of possessing child pornography. The applicable Guidelines range called for a sentence of 210 to 262 months' imprisonment. The district court, after considering the factors in 18 U.S.C. § 3553(a), sentenced Cherry to 120 months' imprisonment. Because the sentence is substantively reasonable, we affirm the judgment of district court.

---

[*] The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

1

When FBI agents executed a search warrant at a North Carolina home on March 8, 2005, the target of the investigation cooperated with federal authorities, informing the FBI that he had received several e-mail messages containing child pornography from an e-mail address belonging to Andy Cherry. When FBI agents executed a search warrant at Cherry's place of business, they retrieved from Cherry's computer e-mails between Cherry and the North Carolina target; most of the e-mails did not have text in the body of the e-mail, just attachments of images of child erotica, child pornography, and adult pornography. Agents also discovered zip disks holding 28 child pornography movies, 193 child pornography still images, seven sadistic images of child pornography, and one sadistic child pornography movie. Agents also recovered the text of an online chat conversation between Cherry and an individual going by the name of "The Zonka." In the chat text, Cherry described in graphic detail molesting his children and stated that he molested his sons only while they were young and that it was "wild how you can get away with that before the age of memory." Cherry also discussed molesting his nieces, who were at the time 5, 7, 11, and 12 years of age. As a result of the chat text, local child welfare authorities investigated Cherry's alleged abuse of his sons and nieces, but authorities eventually closed the case because of a lack of evidence of abuse. Cherry denied having actually harmed any of the children and explained the claims made in his end of the online conversation by describing how he met a woman online who claimed to have been sexually abused by her father, The Zonka, and indicating that he had attempted to bait The Zonka into talking about the abuse. However, the Probation Office did not find this explanation to be credible.

Cherry began seeing Dr. Mary Gannon for counseling in July 2005 and entered an inpatient treatment center in November 2005. Cherry pleaded guilty to four counts of distributing child pornography, nine counts of receiving child pornography, and one count of possessing child pornography. Under U.S.S.G. § 2G2.2(a)(2), the base offense level was 22. The Probation Office included the following enhancements: two levels under U.S.S.G. § 2G2.2(b)(2) because of the depiction of prepubescent children under the age of twelve; five levels under U.S.S.G. § 2G2.2(b)(3)(B) because Cherry received a "thing of value" in exchange for his distribution of images; four levels under U.S.S.G. § 2G2.2(b)(4) because of the sadistic nature of some of the images; five levels under U.S.S.G. § 2G2.2(b)(5) because Cherry engaged in a pattern of activity involving the sexual abuse of a minor; two levels under U.S.S.G. § 2G2.2(b)(6) because Cherry used a computer to receive and distribute child pornography; and five levels under U.S.S.G. § 2G2.2(b)(7)(D) because the offense involved more than 600 images. The Probation Office applied a three-level adjustment for acceptance of responsibility, resulting in a total offense level of 42. Cherry's criminal history category was I. The resulting sentencing range was 360 months to imprisonment for life.

Cherry's sentencing hearing was held on March 17, 2006. Dr. Mary Gannon, Cherry's therapist, testified that Cherry began seeking treatment from her in July 2005 and had been to around 31 sessions. Dr. Gannon opined that Cherry suffered from a sexual disorder not otherwise specified—"a maladaptive use of sexual fantasy and sexual behavior to self-regulate one's mood and use it as a coping strategy to deal with life stresses." Dr. Gannon testified about Cherry's childhood sexual experimentation with other young boys when Cherry was about 9 or 10 and about Cherry's sexual relationship with a girlfriend when Cherry was in high school. These experiences, according to Dr. Gannon, "seemed to have caught his attention and seemed to have been a major way to regulate his mood." Dr. Gannon also described the nature of sexual addiction and noted that the anonymous nature of the internet can increase the chances of risk-taking behavior on the part of the addict. Dr. Gannon stated that Cherry had taken responsibility for his actions and had progressed in therapy. Regarding Cherry's explanation for his online conversation with The Zonka, Dr. Gannon explained that it was likely Cherry's attempt to enhance the relationship with the woman he met online and that Cherry's discussions about abusing his own sons was a way for Cherry to get The Zonka to share the same kind of information.

The district court also heard testimony from David Breeding, a therapist and approved provider of sex offender evaluation and treatment services under Kentucky law. Breeding testified that Cherry was in the lowest risk category for sexual offenders and that, in his opinion, Cherry was not a pedophile. However, Breeding admitted that there were no models to ascertain the risk that an offender will commit an internet offense.

Maggie Schroeder, a family services clinician with the Kentucky Cabinet for Health and Family Services, testified that the investigation into the allegations that Cherry abused his children or his nieces was closed and that investigations by multiple government agencies uncovered no evidence of abuse. When asked on cross-examination about the fact that Cherry had claimed to have committed the abuse "before the age of memory," Schroeder testified that children abused at an age young enough that they would be unable to remember the abuse will often "act out" sexually as a result of the abuse and that Cherry's children did not act out in any way suggesting any abuse in their pasts.

The district court accepted all of the Probation Office's recommended enhancements except for the five-level enhancement for the alleged pattern of activity involving the sexual abuse of a minor. The district court concluded that the evidence that Cherry abused his children or nieces was not very strong and that Cherry's online claims "certainly could have been just hype," conclusions that the Government does not challenge on appeal. The district court then calculated the relevant Guidelines range applicable to an offense level of 37, rather than 42; the range under the Guidelines was 210 to 262 months of imprisonment.

The district court acknowledged that the applicable Guidelines range was a consideration in determining the appropriate sentence. In discussing the seriousness of the crime, the district court clearly recognized that the crime is serious, that offenders like Cherry enable the production of child pornography, and that the seriousness of the crime is reflected in the harshness with which Congress has chosen to treat it. The district court also noted the "unfortunate coincidence of technology and latent desire, creating criminal conduct that never could have occurred . . . and that people who are doing acts which we have deemed criminal would never have done them in different circumstances." However, the district court stated that this "unfortunate coincidence" did not change the fact that those engaging in the trade of child pornography perpetuate the abuse of the children depicted in the images. Regarding Cherry specifically, the district court stated that the number of images Cherry downloaded was "relatively small compared to [other defendants], and the guidelines have sort of a skewed measurement of those numbers," because the pace of technology has made it much easier to download a large number of images quickly. The district court also pointed out the "retail" nature of Cherry's activities—that Cherry's trades were a "personal connection" and were not seemingly in the nature of others engaged in wholesale trade using a file server. The district court concluded, however, that the use of more primitive e-mails to engage in small-scale trade did not outweigh "the aggravating factors inherent in the interactive nature of the one-on-one chat and e-mail exchanges."

Regarding the consideration of a need to protect society, the district court concluded that Cherry was possessed with "self-knowledge" of his actions and presented little risk of reoffending. The district court also discussed the need for education or corrective treatment. Noting that Cherry would get little treatment in prison, the district court counted this factor in favor of a low sentence, especially in light of Cherry's demonstrated desire for treatment. The district court imposed a sentence of imprisonment for 120 months, well below the bottom of the applicable Guidelines range, but double the five-year mandatory minimum Cherry requested.

The district court gave the Guidelines sufficient weight and reasonably weighed the factors in § 3553(a) in imposing a sentence well below the Guidelines range in this case. In *United States v. Booker*, 543 U.S. 220, 245 (2005), the Supreme Court held that the Sentencing Guidelines were advisory. Accordingly, "a district court is permitted to vary from those guidelines in order to impose

a sentence which fits the mandate of [§] 3553(a)." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006). Our review is limited to whether the district court's sentence is reasonable. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005).

The sentence in this case is both procedurally and substantively reasonable. The Government does not argue on appeal that the sentence is procedurally unreasonable and we find no legal basis on which to conclude that the sentence is substantively unreasonable, even though we reviewing judges might have reasonably imposed a tougher sentence. We have held a sentence substantively unreasonable "when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *Collington*, 461 F.3d at 808 (internal quotation marks omitted). The district court did none of these things in this case, however. Instead, the district court reasonably applied the relevant § 3553(a) factors in imposing a ten-year sentence.

Section 3553(a) provides, in relevant part:

The court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) . . . . [And] shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant; and

      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;

. . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; . . . .

The district court reasonably considered the nature and circumstances of the offense and the history and characteristics of the offender. 18 U.S.C. § 3553(a)(1). In particular, the court reasoned that Cherry has "the understanding of a need to change and he has the ability to do so," and that Cherry's efforts at rehabilitation were more extensive than those the district court usually sees in offenders. The Government does not appear to take issue with the district court's analysis in this regard.

The district court also reasonably considered the need to afford adequate deterrence. 18 U.S.C. § 3553(a)(2)(B). The district court noted the importance of sending a message to defendants like Cherry who somehow believe that their actions are not criminal. The prospect of spending 10 years in prison is not something a potential offender would ignore, and the sentence certainly constitutes a deterrent to Cherry. Although the Government maintains that the variance "minimizes" Cherry's conduct and, thus, that the sentence does not afford adequate deterrence, any variance from the Guidelines arguably "minimizes" the conduct of conviction. However, the 120-month sentence imposed, although below the applicable Guidelines range, can hardly be said to "excuse" Cherry's conduct.

The district court also considered the need for the sentence imposed to protect the public from Cherry. 18 U.S.C. § 3553(a)(2)(C). The district court reasoned, based on the testimony at the sentencing hearing, that Cherry represents a low risk for reoffending. Although the Government maintains that it is unknown whether the sentence will protect the public, the Government does not take issue with this specific aspect of the district court's reasoning.

With respect to 18 U.S.C. § 3553(a)(2)(D), the district court stated at sentencing that Cherry will not get the help he needs in prison and, therefore, a consideration of the need for the sentence imposed to provide Cherry with needed treatment in the most effective manner supported a variance. The Government agrees that the sentence "probably does provide [Cherry] with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

Importantly, the district court was well aware of the kinds of sentences available and the relevant Guidelines range, and carefully considered the seriousness of the offense. 18 U.S.C. § 3553(a)(2)(A) & (a)(3) & (a)(4). The district court correctly calculated the relevant Guidelines range, and the Government does not challenge that calculation. The district court properly applied the appropriate enhancements under the Guidelines and concluded that the statutory minimum sentence of five years was too lenient, establishing that the district court was well aware of the kinds of sentences available and the relevant Guidelines range. Furthermore, the district court did not simply dismiss the seriousness of Cherry's crimes in imposing sentence, but rather stressed repeatedly the need to punish those who create the demand for child pornography.

We cannot agree with the Government's contention that the sentencing court "ignored" Cherry's conduct. A below-Guidelines sentence does not *ipso facto* amount to "ignoring" or failing to consider the conduct supporting the enhancements. To be sure, a set of facts that operates to enhance a sentence simultaneously counsels against a variance. Such is the nature of an enhancement. But it does not follow that the presence of an enhancement means that the crime is so serious that a variance is inherently unreasonable. Such reasoning, however attractive, is inconsistent with the advisory nature of the Guidelines mandated by *Booker*, in the wake of which we have stated repeatedly that a below-Guidelines sentence is not presumptively unreasonable. *See, e.g.*, *Collington*, 461 F.3d at 808. Accepting the Government's argument would effectively result in such a presumption.

The essence of the Government's argument appears to be that the 120-month sentence imposed here cannot be reasonable because it results in such a relatively low sentence—relative, that is, to the Guidelines range of 210 to 262 months. Cherry is, in the Government's opinion, a run-of-the-mill offender, and the variance in this case does not comport with § 3553(a)(2)(A)[1] because Congress and the Sentencing Commission have expressed their will through the Guidelines. However, the Government's argument regarding § 3553(a)(2)(A) would give too little effect to the

---

[1] Section 3553(a)(2)(A) provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

parsimony provision of § 3553(a)—that the district court shall impose a sentence "sufficient, but not greater than necessary," to comply with § 3553(a)(2). The district court, moreover, concluded that Cherry is, in a number of ways, unlike other defendants the district court has sentenced for similar offenses. Thus, the issue is not whether the sentence is below the Guidelines, but whether, as it pertains to this defendant and the offenses he committed, the sentence comports with the purposes of § 3553(a)(2)(A). The district court imposed a 10-year sentence, double the mandatory minimum. Such a sentence reasonably reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense.

It is true that the district court should not have considered the length of time covered by the superseding indictment in imposing a variance. The district court, in its written explanation for Cherry's below-Guidelines sentence, noted that "the time frame charged in the Superseding Indictment is relatively short." Although some of the conduct in the indictment covers a brief period of time, the sentencing memorandum Cherry submitted to the district court states that "[s]tarting in about 2002 or 2003, Andy began to download child pornography." In light of Cherry's admission that he had been downloading child pornography for several years, it is not clear why the district court concluded that the short timeframe of the crimes to which Cherry pleaded guilty supported a decision to grant a large downward variance. However, in light of the other reasons offered by the district court for the sentence imposed, this error does not alone render the district court's conclusion unreasonable.

In sum, the district court, in imposing a sentence 43% below the applicable Guidelines range, stressed repeatedly the seriousness of Cherry's offense, took into account the kinds of sentences available (and concluded that the minimum was too lenient), considered Cherry's willingness to get help and his progress in counseling, and considered Cherry as an individual entitled to an individualized sentence below the Guidelines.[2] Although we might have adhered to the Guidelines or imposed a harsher sentence were we in the position of the sentencing court, our review is not de novo and we cannot conclude that the sentence imposed by the district court is substantively unreasonable.

Our decision in *United States v. Davis*, 458 F.3d 491, 496 (6th Cir. 2006), does not require a different result. In *Davis*, we rejected as unreasonable a sentence representing a 99.89% variance from the bottom of the applicable Guidelines range, reasoning, in part, that the rationale for a variance must be compelling in proportion to the extent of the downward variance. Our decision in *Davis* that a variance of almost 100% was substantively unreasonable on the facts of that case does not require the same result in the instant case involving a 43% variance supported by relevant considerations under § 3553(a). The opinion in *Davis* highlighted the fact that the variance granted in that case left "no room to make reasoned distinctions between Davis's variance and the variances that other, more worthy defendants may deserve." *Id.* at 499. In contrast to *Davis*, the district court in this case imposed a sentence that was double the mandatory minimum, leaving ample room to sentence future defendants who may prove more deserving of a variance than Cherry. Moreover, we had a difficult time concluding that the reasons for the district court's variance in sentencing Davis, such as age and length of time between the commission of the crime and the sentencing hearing, were compelling enough to support an almost 100% variance. Thus, it is difficult to extract from *Davis* an idea of *how* compelling perfectly legitimate reasons must be for a 43% variance or

---

[2]Although the Government maintains that it was error for the district court to base its decision to vary from the Guidelines on the fact that Cherry did not use a file server in committing his crimes, the record establishes that the district court did not base its decision to impose a below-Guidelines sentence on the lack of a file-server. In its statement of reasons for imposing the below-Guidelines sentence, the district court concluded that the mitigating factor of the lack of a file server *did not* outweigh the aggravating nature of the one-on-one exchanges in which Cherry engaged. Whether or not the lack of a file server is a mitigating factor is perhaps debatable, but because the sentencing decision in this case was not based on such a consideration, we need not reach the merits of such an argument.

how this court is to review the careful and reasoned decision of the district court. *See United States v. Buchanan*, 449 F.3d 731, 740-41 (6th Cir. 2006) (Sutton, J., concurring) ("If the trial court appreciates that the guidelines are advisory, fairly considers the 3553(a) factors in announcing its sentence and adheres to the other procedural requirements of a reasonable sentence, that should suffice.").**[3]** Furthermore, this court in *United States v. Husein*, 478 F.3d 318 (6th Cir. 2007), upheld a variance as large as the one in *Davis* based on the individual circumstances of that case, highlighting the fact that the very nature of individualized sentencing makes it difficult for this court, reviewing a well-reasoned decision by a district court with day-to-day expertise in sentencing, to conclude that a sentence is unreasonable merely by looking at the extent of the variance. *See also United States v. Fuson*, No. 04-3050, 2007 WL 414265 (6th Cir. Feb. 8, 2007) (affirming a sentence of probation where the Guidelines called for a sentence of 24 to 36 months in prison based on the specific facts of the case).

Nor does this court's recent decision in *United States v. Funk*, 447 F.3d 421 (6th Cir. 2007), require reversal. In *Funk*, this court reversed a below-Guidelines sentence where the district court's decision was based on an "impermissible" policy disagreement with the Guidelines. *Id.* at 430. However, this case is unlike *Funk* because the district court in this case did not simply conclude that the Guidelines were of no use in calculating the sentence imposed, but rather concluded that the Guidelines range resulted in a sentence greater than necessary to achieve the purposes in § 3553(a). Although the district court in the present case commented on the evolution of technology and its tendency to "skew" the numbers since it has become relatively easy to download large amounts of pornography, the district court also stated that the Guidelines overstated the nature of Cherry's conduct *as an individual*. This one stray comment made during the sentencing hearing does not establish that the district court sentenced Cherry based on an impermissible policy disagreement with the Guidelines. As we have said in the context of a within-Guidelines sentence, "misstatements of the district court's sentencing task do not necessarily imply a reversible sentencing error." *United States v. Bolden*, 479 F.3d 455, 468 (6th Cir. 2007) (internal quotation marks omitted). "After *Booker*, we review a sentence for reasonableness, that is, whether the district court's sentence is a reasonable application of Section 3553(a)." *Davis*, 458 F.3d at 510 (6th Cir. 2006) (internal quotation marks omitted). To have a different rule that runs in favor of the Government in the case of below-Guidelines sentences would be inequitable and would lead this court down the path of micromanaging the sentencing process, which is not our role.

The sentence imposed is reasonable in light of the factors in § 3553(a) for the reasons articulated by the district court. "[S]entencing courts, not the Sentencing Commission, retain the ultimate authority within reason to apply the 3553(a) factors to each criminal defendant." *Buchanan*, 449 F.3d at 741 (Sutton, J., concurring). The district court gave the Guidelines considerable weight and the fact that the sentence imposed represents a substantial variance from the Guidelines range does not alter the conclusion. Concluding otherwise risks putting us in substantial tension with the imperative of the Supreme Court in *Booker*. The district court did not "select[] the sentence arbitrarily, base[] the sentence on impermissible factors, fail[] to consider pertinent § 3553(a) factors or give[] an unreasonable amount of weight to any pertinent factor." *Collington*, 461 F.3d at 808.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

**[3]** Although the sentence at issue in *Buchanan* was a within-Guidelines sentence and sentences falling outside the advisory Guidelines range may be subject to closer review, the principles articulated by Judge Sutton regarding the proper division of labor between the district courts and appellate courts regarding sentencing would appear to apply to a below-Guidelines sentence as well.