*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0403p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

　　　　　　*Plaintiff-Appellee,*

　　*v.*

PETER KIRCHHOF,

　　　　　　*Defendant-Appellant.*

No. 06-5203

>

---

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 05-00052—John G. Heyburn II, Chief District Judge.

Argued: April 20, 2007

Decided and Filed: October 2, 2007

Before: DAUGHTREY and GIBBONS, Circuit Judges; SCHWARZER, District Judge.[*]

---

## COUNSEL

**ARGUED:** Marc S. Murphy, STITES & HARBISON, Louisville, Kentucky, for Appellant. Madison T. Sewell, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** Marc S. Murphy, Amber D. Nicely, STITES & HARBISON, Louisville, Kentucky, for Appellant. Monica Wheatley, Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee.

---

## OPINION

---

JULIA SMITH GIBBONS, Circuit Judge. Defendant-appellant Peter Kirchhof appeals the district court's sentence of 180 months following his guilty plea to one count of transporting child pornography over the internet in violation of 18 U.S.C. § 2252(a)(1) and one count of receiving child pornography over the internet in violation of 18 U.S.C. § 2252(a)(2). Kirchhof challenges his sentence on the ground that his sentence is substantively unreasonable. For the following reasons, we affirm the sentence of the district court.

---

[*] The Honorable William W Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

I.

On February 16, 2005, an undercover agent with the Federal Bureau of Investigation in Buffalo, New York, entered an internet chat line titled "100%preTeengirlSexPics." As summarized by a probation officer and as admitted by the defendant himself:

> Advertised in the chat line was an f-serve [file server] offered by the mIRC nickname "EVERLAND" using the trigger "!everland." The advertisement carried [ ] the following statement "Enjoy yourself - free leech if your [sic] young and chat with me on webcam." Leech is a common term used on mIRC which means that if a user complies with the f-serve operator's requirements, the user is granted unlimited downloading privileges.

After sending corrupted files to the f-serve and reciprocally downloading files from "EVERLAND" that contained pictures of a minor engaged in sexually-explicit conduct, the FBI agent ascertained the location of the Louisville, Kentucky, residence associated with the f-serve computer's internet protocol address. Federal and state law enforcement officials executed a search warrant for that residence, the apartment of Kirchhof and his wife. During the search, officers seized Kirchhof's computer, which contained 992 child pornography images and 22 child pornography videos. At that time, the defendant also "admitted both to operating the f-serve to distribute the images and also to possession of the images that were found on his computer."

Kirchhof pled guilty to one count of transporting child pornography over the internet in violation of 18 U.S.C. § 2252(a)(1) and one count of receiving child pornography over the internet in violation of 18 U.S.C. § 2252(a)(2). At his sentencing hearing, Kirchhof introduced evidence that he was a 22-year-old German national who was an A-student at the University of Louisville and who had then been married for approximately a year-and-a-half to an American citizen. Kirchhof had no prior criminal record and, while a student, was employed as a teller at Fifth Third Bank. He lost that job, however, upon his arrest for the child pornography charges but was still earning money at the time of the hearing by serving as a teaching assistant at the University of Louisville.

The defendant further introduced evidence that he suffered from a recently-diagnosed obsessive-compulsive disorder ("OCD"), a condition for which he was receiving treatment, and one that "played a role in his computer compulsions." Other testimony at the sentencing hearing confirmed that Kirchhof was also then participating in a sex-offender treatment program, that he did not meet the psychological profile of a pedophile or a sexual predator, that the risk of his committing another similar crime was very low, and that federal prison guidelines would delay Kirchhof's participation in any Bureau of Prisons sex-offender treatment programs until the last 18 months of his sentence.

At the conclusion of the evidentiary hearing, the district judge determined that the appropriate sentencing guideline range for the offenses was 210-262 months in prison, which is not challenged on appeal. The district court sentenced the defendant to concurrent 180-month sentences, explaining:

> This is a case which I believe is not about pornography . . . . This is more a case about child abuse . . . . It's not about the public display of personal acts. It's really about the public display of criminal acts.
>
>         . . . .
>
> As in all criminal acts, different steps certainly have different degrees of criminality, and that doesn't make necessarily, though, the lesser steps – they are less significant, but they can be equally important, and in this case there's a strong reason

to believe that the existence of Internet trading of child pornography does create in essence a virtual community of traders and users, and I don't think it's an exaggeration to say that the existence of this community on the Internet validates and normalizes the behavior of an entire group that the rest of us if we looked at it would find completely abhorrent to the essential values of our society. That's not just me talking, of course. That's what Congress also determined in enacting the statute that they did.

Moreover, I think it is true that the continued availability of this material desensitizes everyone to the consequences of it in a very real way. . . .

I'm not saying that's something that the defendant here thought about or wanted to do, but the fact is that his conduct enabled all that to happen. The defendant has said that he was unaware that collecting and trading the material was illegal, or maybe he wasn't even sure it was bad. That was meant to be a statement suggesting his guilt was not as bad as it might otherwise be, but on reflection I think it's actually a statement that highlights the problem, and that is that people are unaware of how bad this is and how their involvement in what they believe not to be a criminal aspect of the activity enhances, enables and perpetuates the industry, if you will.

I think particularly important in this moment – you know, there are lots of ways to stop activity that we abhor. We can catch all the people that do it, but one of the big things is deterrence. When you are deterring, it is a sad fact that the interests of justice as we might perceive them to an individual clash with the interests of – that society has for looking at justice in a larger way. I think that is probably true in this particular instance because one could say, well, the defendant will never do this again. . . .

But I think we have to look at it at various different times and places, and we are at this time and this place, at a huge, huge problem, and unless we make it clear to all those out there that are doing it secretly on the Internet and who are not caught and may think that because they are on the Internet in their home that they are doing something that is innocent, that this is something we don't condone, we don't excuse, and in fact that we condemn, and the best way we know to deter that future activity is to say so out loud with a long sentence. . . .

It may be true that the defendant is a productive member of society, and hopefully he will be a productive member of society in the future. My experience in these cases is that many of the people who do these things are outwardly productive members of society, and they fool themselves into thinking that they are and that what they are doing is somehow permitted or consented to or otherwise. . . .

Although the district court sentenced him to a term 14% below the low-end of the guidelines range, Kirchhof now appeals to this court, arguing that the sentence is unreasonable and that the district judge attempted to send a message to the entire child pornography industry rather than tailoring the sentence to the individual defendant appearing before him.

II.

Both district courts imposing sentences and appellate courts reviewing sentences are to be guided by the factors set forth in 18 U.S.C. § 3553(a). *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005). Post-*Booker*, the discretion of a district court in handing down a sentence has been

enhanced, and a sentence will be upheld on appeal if that sentence is "reasonable."[1]  *Id.*  This reasonableness inquiry has both a procedural and a substantive component.  *See United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005).

### A.

The goal of the procedural reasonableness requirement is to ensure that a sentencing court explains its reasoning to a sufficient degree to allow for reasonable appellate review. *United States v. Dexta*, 470 F.3d 612, 614 (6th Cir. 2006).  If the record demonstrates that the sentencing court addressed the relevant factors in reaching its conclusion, the court need not explicitly consider each of the § 3553(a) factors or engage in a rote listing or some other ritualistic incantation of the factors. *Id.* at 614-15.  At oral argument Kirchhof conceded that he only challenges the substantive reasonableness of his sentence.  Indeed, a review of the record shows that the district court explicitly addressed nearly all of the § 3553(a) factors and provided a detailed explanation of its reasoning. For this reason, Kirchhof's sentence is procedurally reasonable.

### B.

"A sentence is substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Husein*, 478 F.3d 318, 332 (6th Cir. 2007) (internal quotation marks omitted).  The law of this circuit draws a distinction between sentences that are within the recommended guidelines range and those outside of that range. *Dexta*, 470 F.3d at 615.  When a district court imposes a sentence that is within the advisory guidelines range, the sentence is accorded a rebuttable presumption of reasonableness. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006).  Where, as here, the district court "independently chooses to deviate from the advisory guidelines range (whether above or below it), we apply a form of proportionality review:  the farther the judge's sentence departs from the guidelines sentence[,] the more compelling the justification based on factors in section 3553(a) must be." *United States v. Davis*, 458 F.3d 491, 496 (6th Cir. 2006) (internal quotation marks omitted).

Kirchhof directly challenges the presumption of reasonableness and proportionality review, arguing that they result in a disproportionate weight being given to the guidelines recommendation. The Supreme Court has recently upheld the presumption of reasonableness and expressly reserved decision on proportionality review. *Rita v. United States*, 127 S. Ct. 2456, 2462, 2467 (2007).  Both remain the law of this circuit, which is binding upon this panel. *See Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel.").  Furthermore, at least with respect to the presumption of reasonableness, the Supreme Court considered and rejected Kirchhof's argument. The presumption of reasonableness does not violate the Sixth Amendment because it neither requires a sentence within the guidelines nor forbids a sentence outside the guidelines. *Rita*, 127 S. Ct. at 2466.  The fact that the presumption may encourage district courts to impose guidelines sentences does not change the constitutional calculus and does not provide cause for holding it unconstitutional. *Id.* at 2467.  Rather, this encouragement might help achieve the congressional goal of diminishing unwarranted sentencing disparities.  *Id.*  This reasoning applies with equal force to any encouragement that may be provided by proportionality review.

---

[1]In its brief, the government challenged the jurisdiction of this court to review a sentence, appealed by a defendant that is below or within the correctly-calculated guideline range.  Since the government's brief was submitted, we have found jurisdiction to review a defendant's sentence, irrespective of whether it falls within the advisory guidelines range. *United States v. Trejo-Martinez*, 481 F.3d 409, 411-12 (6th Cir. 2007).

Kirchhof also presents a facial challenge to the reasonableness of the recommended guidelines range itself, arguing that the recommendations have been distorted by congressional meddling. Kirchhof complains that because "Congress has enacted a five-year mandatory minimum, written or rewritten many of the Guideline provisions, and directed the Commission to increase generally the punishment for [child pornography] violations," the guidelines no longer reflect the expertise of the Sentencing Commission. However, Kirchhof fails to recognize that it is the prerogative of Congress to fix the sentence for a federal crime and the scope of judicial discretion with respect to a sentence. *Mistretta v. United States*, 488 U.S. 361, 364 (1989). As Kirchhof does not suggest that the modifications to the guidelines are unconstitutional, it is not the court's role to second-guess the legislative determination of appropriate sentences made by Congress. *See United States v. Caver*, 470 F.3d 220, 249 (6th Cir. 2006).

This case is unusual because the appellant is a defendant who argues that the downward variance from the recommended guidelines range that he received is unreasonable because it is not large enough. This alters the proportionality analysis: rather than asking whether considerations based upon § 3553(a) are sufficiently compelling to justify the sentence, this court must determine whether the considerations based upon § 3553(a) are so compelling as to necessitate a shorter sentence. Our review is not *de novo*. *United States v. Cherry*, 487 F.3d 366, 372 (6th Cir. 2007). "[W]hen a district court considers the relevant 3553(a) factors in-depth and reaches a determination that the appropriate sentence varies outside the advisory guidelines range, we are very reluctant to find the sentence unreasonable." *United States v. Collington*, 461 F.3d 805, 811 (6th Cir. 2006). To do otherwise would be "substituting our judgment for the district court's." *Id.*

Kirchhof argues that the district court, when considering the § 3553(a) factors, unreasonably weighed certain factors over others. Specifically, Kirchhof contends that the district court overemphasized the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A), and minimized "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1), by selecting a sentence that would "send a message to the entire [child pornography] industry" rather than one individually suited to him. There is no question that the district court extensively discussed how Kirchhof's offense factually relates to the entire child pornography industry. However, Kirchhof misunderstands how this undisputed fact affected the district court's consideration of the § 3553(a) factors. The "nature and circumstances of [his] offense," § 3553(a)(1), the transportation of child pornography, contributes to the creation of a "virtual community . . . [that] validates and normalizes the behavior." Kirchhof's sentence not only "reflect[s] the seriousness of the offense [and] promote[s] respect for the law," § 3553(a)(2)(A), but also "afford[s] adequate deterrence to criminal conduct," § 3553(a)(2)(B), of others who, as a result of the normalization offered by Kirchhof's specific conduct, "may think that because they are on the Internet in their home that they are doing something that is innocent." As the district court noted, this is the same understanding of the harm and the necessary remedy that Congress has adopted. Contrary to Kirchhof's argument, the district court was not minimizing the nature and circumstances of his offense when it selected a sentence sufficiently long to deter others. Rather, it was motivated by them.

None of the other factors to which Kirchhof directs the court are so compelling as to necessitate a shorter sentence. Kirchhof argues that he had no prior record, had a stellar work and school record, and was newly married. *See* 18 U.S.C. § 3553(a)(1). However, Kirchhof's lack of prior criminal history was already taken into account in calculating his guidelines range, and according to the advisory policy statements contained in the guidelines, his other personal characteristics are "not ordinarily relevant" in determining whether a departure is warranted. U.S.S.G. §§ 5H1.2, 5H1.5, 5H1.6. Kirchhof offers no reason why these characteristics are not properly accounted for in the guidelines or are unusually relevant in his case. *See Jackson*, 408 F.3d at 305 n.3 (requiring a district court to address the use of factors discouraged by the guidelines); *see*

*also United States v. Borho*, 485 F.3d 904, 912-13 (6th Cir. 2007) (rejecting similar unsupported arguments). Kirchhof also argues that he is not a pedophile but was instead merely ignorant of the seriousness of his conduct and suffers from OCD. While these facts, if believed, might tend to reduce Kirchhof's culpability, they also support a conclusion that Kirchhof continues to minimize his conduct without fully accepting responsibility. Furthermore, none of these facts do anything to mitigate the specific harm of Kirchhof's crime, the normalization of child pornography and child abuse. Finally, Kirchhof argues that the district court failed to consider the lack of a need "to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2)(C), and the need "to provide the defendant with . . . correctional treatment," § 3553(a)(2)(D). However, as Kirchhof admitted at oral argument, his sentence is procedurally reasonable, and the district court is not required to explicitly address each factor. *See Dexta*, 470 F.3d at 614. It was not unreasonable for the district court to conclude that whatever mitigation was provided by these factors was outweighed by the other factors. Even if Kirchhof's aggregate arguments support a variance from the guidelines range, there is no basis from which to conclude that Kirchhof's case is so extraordinary that the district court's 14% downward variance is unreasonably small.

Lastly, Kirchhof argues that his sentence is unreasonably high when compared with similar cases in his district. One of the factors that the court must consider is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). "The only way to avoid unwarranted sentence disparities is for appellate courts to preserve reasoned distinctions among offenders." *United States v. Poynter*, No. 05-6508, ___ F.3d ___, 2007 WL 2127353, at *7 (6th Cir. July 26, 2007) (internal quotation marks omitted). As troubling as unexplained disparities between individual defendants may be, Congress established the guidelines system as the mechanism to "bring about greater fairness in sentencing through increased uniformity." *Rita*, 127 S. Ct. at 2467. Therefore, this court's review of substantive reasonableness "starts with the sentencing estimate provided by the Sentencing Commission," not the sentences received by other individual defendants. *Davis*, 458 F.3d at 496. As explained above, Kirchhof cannot show that the circumstances of his case are so extraordinary as to require a larger downward variance from the guidelines.

Furthermore, the cases to which Kirchhof directs the court do not present unwarranted disparities. In early 2006, Kirchhof was one of four defendants sentenced in the Western District of Kentucky for the distribution and receipt of child pornography over the internet. Norman Borho was sentenced to 72 months of imprisonment, a 66% downward variance from the low-end of the advisory guidelines range of 210-262 months. *Borho*, 485 F.3d at 906. This court subsequently vacated Borho's sentence because such a large downward variance was substantively unreasonable. *Id.* As we find in this case, the court found that the defendant's lack of prior criminal history, psychological issues, and other factors disfavored under the guidelines failed to present extraordinary circumstances meriting such a downward variance. *Id.* at 912-14. Ronald Beach was sentenced to 96 months of imprisonment, a 54% downward variance from the low-end of the advisory guidelines range of 210-262 months. The government has appealed this sentence on the grounds that such a large downward variance is substantively unreasonable, and the decision of this court is pending. *United States v. Beach*, No. 06-5368 (6th Cir. filed Mar. 16, 2006). Andy Cherry was sentenced to 120 months of imprisonment, a 43% downward variance from the low-end of the advisory guidelines range of 210-262 months. *Cherry*, 487 F.3d at 367. This court affirmed Cherry's sentence as substantively reasonable because the district court had "stressed repeatedly the seriousness of Cherry's offense, took into account the kinds of sentences available (and concluded that the minimum was too lenient), considered Cherry's willingness to get help and his progress in counseling, and considered Cherry as an individual entitled to an individualized sentence below the Guidelines." *Id.* at 372.

As discussed above, the district court, indeed the same district judge as in *Cherry*, appropriately weighed the § 3553(a) factors and considered Kirchhof as an individual in arriving at

the downward variance of 14% in this case.  Kirchhof would undoubtedly prefer a 43% downward variance and points to certain facts that he suggests warrant a shorter sentence than Cherry.  However, the court can just as easily find facts suggesting the reverse.  Unlike Kirchhof, Cherry accepted responsibility for his offense without blaming it on an uncontrolled impulse.  Any discrepancy between Cherry and Kirchhof can be explained by the individual facts of their cases and the nature of appellate reasonableness review.  While we review sentences to avoid unwarranted sentencing disparities, this court cannot eliminate the tension between uniformity and individual sentencing.  *See Rita*, 127 S. Ct. at 2464 (discussing the conflicting goals).  It may have been reasonable for the district court to grant Kirchhof a larger downward variance, just as it may have been reasonable for the district court to grant Cherry a smaller downward variance. *See Cherry*, 487 F.3d at 372 ("Although we might have adhered to the Guidelines or imposed a harsher sentence were we in the position of the sentencing court, our review is not *de novo* . . . .").  We reverse sentences when it is unreasonable to conclude that the circumstances, in light of the § 3553(a) factors, justify the sentence issued.  *See Davis*, 458 F.3d at 496-97.  Although Kirchhof's sentence is longer than Cherry's, both are reasonable.

III.

For the foregoing reasons, we affirm the sentence of the district court.