DOWD,
Dissenting.
The district court, facing a spread of 73 months within the guideline range of 292 months to 365 months, chose a sentence of 360 months with a limited explanation as to why he advanced 68 months beyond the minimum in imposing a 360 month sentence on a 37 year old defendant who timely admitted his conduct, apparently attempted to cooperate with the government, and who had no prior criminal record.
The United States Sentencing Commission published The History of Child Pornography Guidelines in October, 2009. The report indicates that since their introduction in 1987, the child pornography have undergone nine amendments, each time resulting in significantly increased guideline ranges and available enhancements. The report further indicates that sentences under U.S.S.G. § 2G2.2 have had a high and increasing rate of downward departures and below-guidelines variances. Specifically, footnote 33 in The History states:
In fiscal year 2008, for offenders sentenced under § 2G2.2, the non-government sponsored below-guideline rate was 35.7 percent, the government sponsored below-guideline rate was 8.5 percent, and the above-guideline rate was 2.0 percent. 2008 Sourcebook, Table 28. By comparison, for all offenders, the non-government sponsored below-guideline rate was 13.4 percent, the government sponsored below-guideline rate was 25.6 percent, and the above-guideline rate was 1.5 percent. 2008 Source-book, Table N. In fiscal year 2007, for offenders sentenced under § 2G2.2, the non-government sponsored below-guideline rate was 27.2 percent, the government sponsored below-guideline rate was 7.0 percent, and the above-guideline rate was 2.4 percent. 2007 Sourcebook Table 28. By comparison, for all offenders, the non-government sponsored below-guideline rate was 12.0 percent, the government sponsored below-guideline rate was 25.6 percent, and the above-guideline rate was 1.5 percent. 2007 Sourcebook, Table N.
A review of child pornography sentencing decisions in the Sixth Circuit supports *95 the conclusions reached in footnote 33. As an example, in United States v. Cherry, 487 F.3d 366 (6th Cir.2007), the downward variance by the district court to a sentence of 120 months when the guideline range called for a sentence of 210 to 262 months was affirmed. In the case of United States v. Stall, 581 F.3d 276 (6th Cir.2009), the sentence of the district court to one day incarceration and a ten year period of supervised release was affirmed following the defendant’s conviction of two counts of child pornography, and in spite of the fact that the sentencing range of 57 to 71 months. In the case of United States v. Stern, 590 F.Supp.2d 945 (ND.Ohio 2008), the district court, faced with a advisory sentencing guidelines range of 46 to 57, imposed a prison sentence of 12 months and one day. In United States v. Janosko, 355 Fed.Appx. 892 (6th Cir.2009), the district, court faced with a guideline range 210 to 262 months, imposed a sentence of 180 months. In that case, the defendant unsuccessfully appealed the decision of the Northern District of Ohio, but once again the district court engaged in a downward variance. Also, in the case of United States v. Mikowski, 332 Fed.Appx. 250 (6th Cir.2009), the guideline sentencing range was 262 to 327 months, but the maximum term of imprisonment was limited to a sentence of 240 months. Against that background, the district court sentenced the defendant to 192 months which represented a downward variance of 48 months.
The pivotal decision in Booker for the first time advanced the proposition that the district court not only had to consider the concept of departures, but also a new concept of variances. The Booker decision instructed that the district court, before pronouncing sentence, was required to analyze the sentencing factors under 18 U.S.C. § 3553(a). In this case, the defendant had engaged in pedophile conduct which supported a lengthy sentence.
The district court, at the sentencing hearing, declared in part as follows:
The defendant has a history of a mental health issues. He has been diagnosed with mental health conditions from time to time during his life. He is a person of 37 years of age, has absolutely no prior record, and tragically was abused himself as a young child by a person about ten years his senior. That abuse consisted of sexual assault on him. I take Mr. Warner at his word that he is remorseful for his actions and very sorry that he has, in essence, passed along to another generation of children the victimization that was imposed on him.
I also recognize that he proffered with the government. The government has chose, in its discretion, not to file a 5K motion. The Court believes that the remarks of counsel as it relates to his cooperation with the government are better addressed in a Rule 35 should the government at some point find itself in a position to file a Rule 35 as to Mr. Warner. So at this point I am giving that, because it is contingent in nature, I am giving that proffer no weight. I will, however, consider it should the government find itself in a position to file a Rule 35 at a later date.
Then, the district court concluded:
Needless to say, the facts and circumstances of this case are egregious in the extreme. Mr. Warner assaulted a youngster and victimized another youngster by sexually assaulting N.S. and placing images of M.S. in cyberspace through the internet. As Mr. Kessler appropriately points out, those images cannot be retrieved, they will be in cyberspace forever, which is devastating to the victim’s family and the victim obviously. This is a crime that has victims *96 for a long period of time. The Court associates itself with the nature of these types of crimes the statement in United v. Goff case, a Third Circuit case, decided in the year 2007 concerning the breadth of victimization of the individual victims and their families when they are victimized by child pornography.
These offenses are very very serious under the law. They involve the violation of a youngster who has the protection of the law and deserved to grow up without being victimized. I have no doubts that Mr. Warner’s crimes have had deep psychological effects both on N.S. and M.S. Fortunately, and I believe Mr. Warner believes this, fortunately Mr. Warner was apprehended before there were more victims, but I am not forgetting the fact that Mr. Warner engaged in the distribution of child pornography pictures and images beyond N.S. and M.S., which just exacerbates the situation even more.
The Court finds that a guideline sentence as found by the Court, that is, a sentence in the advisory guidelines of 292 to — 292 to 365 are warranted at the top end of the guideline range, and that is going to be the sentence of the Court.
I respectfully observe that if the defendant had been convicted of the second degree murder of his pedophile victim (offense level 38) and timely admitted his guilt, he would have been facing a range of 168 to 235 months assuming a three-level adjustment for acceptance of responsibility. Yet with the affirmance of his conviction for dealing in child pornography, he will serve 125 months more than if his criminal conduct had been limited to the second degree murder of his victim.
The initial purpose driving the adoption of guideline sentencing was to avoid disparate sentencing for the same type of criminal conduct. Disparate sentencing is now the hallmark of sentencing decisions involving child pornography. In my view, the district court’s sentencing opinion fails to justify a sentence at almost the very top of the guideline range given the defendant’s history. I am unable to concur in the majority opinion even though I acknowledge the deference extended to the district court in the majority opinion.