**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0614n.06

No. 18-6247

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 13, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff–Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| DAVID LEE DAVIS, | ) | |
| | ) | **OPINION** |
| **Defendant–Appellant.** | ) | |

Before: NORRIS, MOORE, and DONALD, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant David Lee Davis was sentenced to 210 months of imprisonment and six years of supervised release for violating 21 U.S.C. § 846 by conspiring to knowingly and intentionally distribute Schedule II controlled substances, oxycodone and oxymorphone, as prohibited by 21 U.S.C. § 841(a)(1). Davis appeals the reasonableness of his within-Guidelines sentence on both procedural and substantive grounds, focusing on the district court's treatment of his career-offender status and his criminal history. However, Davis ultimately fails to identify procedural error that is plain and to overcome the presumption of substantive reasonableness. Therefore, we affirm his sentence as reasonable.

## I. BACKGROUND

On May 24, 2018, Davis, along with his codefendant Danny Ray Vanover, was indicted for conspiring "to knowingly and intentionally distribute Schedule II controlled substances, to include a quantity of pills containing oxycodone and oxymorphone, in violation of 21 U.S.C.

§ 841(a)(1), all in violation of 21 U.S.C. § 846." R. 1 (Indictment at 1) (Page ID #1). At his

rearraignment, Davis entered a guilty plea, R. 35 (Minute Entry for Rearraignment), that the

magistrate judge recommended the district court accept, R. 36 (Recommendation of Acceptance

of Guilty Plea), which the district court did, R. 37 (Order Adopting Recommendation).

In the plea agreement, Davis admitted the following facts regarding the offense:

> (a) From on or about February 25, 2017, to March 14, 2017, in Whitley County, in the Eastern District of Kentucky, the Defendant conspired with others to distribute Schedule II controlled substances, to include oxycodone and oxymorphone.

> (b) On March 14, 2017, the Williamsburg Police Department conducted a search of Danny Vanover's residence. During that search, oxycodone and oxymorphone tablets, drug ledgers, and a digital video recorder attached to an in-home security system were seized. Prior to the execution of this search warrant, law enforcement reviewed a phone call from the Defendant, who was incarcerated at the Whitley County Detention Center. The Defendant appeared to be using coded language to inform Danny Vanover about the location of drug-related items in Vanover's residence.

> (c) A warrant was obtained for the content of Danny Vanover's security system digital video recorder (DVR). The DVR recordings began on February 25, 2017 and continued through March 1, 2017. Approximately 100 drug transactions involving Danny Vanover and others were on the recordings. The recordings also revealed that the Defendant was present for multiple drug transactions. Customers identified from the recordings confirm that the Defendant sold oxycodone and oxymorphone from Vanover's residence.

> (d) In a post-*Miranda* interview, the Defendant, in reference to the timeframe from the DVR recordings, stated that he and Vanover obtained the pills that were sold by purchasing prescriptions from other people.

R. 34 (Plea Agreement at 1–2) (Page ID #89–90).

The Presentence Report ("PSR") calculated Davis's recommended imprisonment range as

188 to 235 months under the Guidelines based on a total offense level of thirty-one and Davis's

criminal history category of VI. PSR at ¶ 111 (Page ID #176). It did not note any factors warranting a departure or a variance. *Id.* at ¶¶ 126, 127 (Page ID #179). There were no objections to the PSR, *id.* at 34 (Page ID #180), and the district court accepted the recommended sentence range as correctly calculated, R. 60 (Sentencing Hr'g Tr. at 3) (Page ID #207). Probation recommended a sentence of 215 months. R. 51 (Sealed Probation Sentencing Recommendation at 1) (Page ID #137).

We briefly summarize the PSR calculations. The PSR calculated Davis's Base Offense Level as twenty-four based on the amount of oxycodone and oxymorphone involved. PSR at ¶ 29 (Page ID #155). Ten levels were added under the career-offender provisions of the Guidelines. *Id.* at ¶ 35 (Page ID #155) (citing U.S.S.G. § 4B1.1(b)(2)). Because Davis had a previous felony drug offense, he was subject to a thirty-year, instead of a twenty-year, statutory-maximum sentence.[1] 21 U.S.C. § 841(b)(1)(C), § 851. Under the Guidelines, this brought Davis's offense level to thirty-four. *See* U.S.S.G. § 4B1.1(b). Three levels were subtracted for acceptance of responsibility, leading to a Total Offense Level of thirty-one. PSR at ¶ 37 (Page ID #155). Davis's criminal history computation was twenty-seven points, falling within a criminal history category of VI. *Id.* at ¶¶ 63–64 (Page ID #167). This was primarily due to sentences that he received in 1998 and March 2015 for mostly drug-related convictions in 1998, 2011, 2012, 2013, and 2014 and a sentence in May 2015 for criminal possession of a forged instrument. *Id.* at ¶¶ 45–46, 48,

---

[1]Davis was aware of the increased statutory-maximum sentence based on a previous felony offense at the time that he entered his guilty plea. The government is required to file an information with the court that a defendant is subject "to increased punishment by reason of one or more prior convictions." 21 U.S.C. § 851(a)(1). The government did so here. R. 32 (Gov't Notice Regarding Statutory Enhancement at 1) (Page ID #85).

50, 55–56, 58 (Page ID #156–61, 163–66).  The remaining points were for driving while under the influence, or variants thereof, possession of controlled substances, and other vehicular infractions. *Id.* at ¶¶ 47, 52, 53–54 (Page ID #157–58, 161–63).  An additional two points were added because Davis committed the instant offense while on parole.  *Id.* at ¶ 62 (Page ID #167).

The district court sentenced Davis to 210 months of imprisonment and six years of supervised release.  R. 49 (J. Davis at 2–3) (Page ID #129–30).  Davis filed this timely appeal.  R. 50 (Notice) (Page ID #135).  He argues on appeal that his sentence was procedurally and substantively unreasonable.  Appellant Br. at 19.

## II.  ANALYSIS

### A.  Procedural Reasonableness.

A sentence must be procedurally reasonable.  We review for "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence."  *Gall v. United States*, 552 U.S. 38, 51 (2007).  Normally, we review the procedural reasonableness of a sentence for an abuse of discretion, but when the defendant fails to object before the district court, as here, we review for plain error.  *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc).  To satisfy plain error review, a defendant must "show (1) error (2) that 'was obvious or clear,' (3) that 'affected defendant's substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'"  *Id.* at 386 (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).  This is an exceptional determination, one we apply

only "where the error is so plain that the trial judge . . . [was] derelict in countenancing it." *Id.* (alterations in original). Although Davis argues that the district court committed procedural error when it did not consider his request for a downward departure or variance and "double count[ed]" his criminal history, Appellant Br. at 21, 23, he does not identify plain procedural error.

First, Davis contends that the district court procedurally erred when it did not explain why it was denying his request for a downward departure or variance and a sentence of 150 months of imprisonment, or in other words, why it applied the career-offender enhancement in light of the national statistics from the United States Sentencing Commission that defense counsel provided. *Id.* at 23–30. To avoid procedural error, the district court "must 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority.'" *United States. v. Klups*, 514 F.3d 532, 537 (6th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). When a district court applies the Guidelines and appears to adopt "the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a)[)]," a long explanation is typically unnecessary. *Rita*, 551 U.S. at 356–57; *Klups*, 514 F.3d at 537 ("[W]hen a sentencing judge concurs with the Sentencing Commission's conclusion that a within-Guidelines sentence is appropriate for a given defendant, the explanation for the sentence generally need not be lengthy (quoting *United States v. Liou*, 491 F.3d 334, 338 (6th Cir. 2007))). However, the district court must address a defendant's "nonfrivolous reasons for imposing a different sentence" than the one contemplated by the district court. *Rita*, 551 U.S. at 357. How much explanation is warranted

depends on the unique circumstances in each sentencing. *Klups*, 514 F.3d at 537 (citing *Liou*, 491 F.3d at 338).

There is no plain error here because the record shows that the district court considered Davis's argument and set forth a reasoned basis for applying the Guidelines. Defense counsel supplied national statistics that purported to show a national trend of career offenders receiving below-Guidelines sentences. The district court responded: "So that sounds to me, though, like a recognition on behalf of perhaps some of my colleagues, that they disagree with the policy statement that's implicit in the recommended guideline." R. 60 (Sentencing Hr'g Tr. at 15) (Page ID #219). Defense counsel countered that these statistics represented an individualized assessment of the § 3553(a) factors, rather than idiosyncratic disagreement with the policies behind the career-offender recommendations, to which the district court said, "[o]kay." *Id.* at 16 (Page ID #220).

The district court then provided a reasoned basis for Davis's sentence that addressed this argument. The district court proceeded to walk through each of the § 3553(a) factors to explain why it was arriving at a Guidelines sentence, which included the career-offender enhancement. *Id.* at 19–28 (Page ID #223–32). Given defense counsel's explanation that the statistics reflect an individualized approach to § 3553(a), it was not plain error for the district court to rely simply on its analysis of the factors to reject Davis's argument. The district court referenced defense counsel's statement about the statistics representing an individualized application of the sentencing factors when it stated, "we [sic] really do think about the person standing in front of me. It's fair for your attorney to ask any judge to think carefully about the person and not just formulistically just use numbers that are recommendations." *Id.* at 25 (Page ID #229). The district court also

6

recognized, albeit indirectly, that the Guidelines were discretionary. *Id.* (explaining that judges should not simply rely on numbers in the recommendations); *id.* at 26 (Page ID #230) (stating that it "did not need to go above [the recommended sentencing range]," suggesting that it recognized it could vary from the recommended sentencing range).

Davis also characterizes this argument as one that the district court failed to consider sentencing disparities when it rejected his statistics argument. Appellant Br. at 23–25. But the district court did consider sentencing disparities, stating that Davis "shouldn't get a harsher sentence or a more lenient sentence just because you're in my courtroom, and I think that's fairly addressed by resting ultimately on what's being recommended, although, after considering all of the [§] 3553(a) factors." *Id.* at 27 (Page ID #231). Thus, Davis's assertion that the district court failed to consider sentencing disparities lacks support. And again, it was not plain error when the district court did not refer to the national-statistics argument at each step of its § 3553(a) factor analysis. *See also United States v. Houston*, 529 F.3d 743, 751–52 (6th Cir. 2008) (rejecting a similar sufficiency-of-the-explanation argument on plain error).

Davis raises a second procedural argument that the district court "double count[ed]" his previous felonies when it determined that an increased statutory-maximum sentence applied pursuant to 21 U.S.C. § 841(b)(1)(C) and 21 U.S.C. § 851 and then used this augmented statutory maximum to trigger the career-offender provisions of the Guidelines under U.S.S.G. § 4B1.1(b). Appellant Br. at 22–24. In *United States v. Stephens*, we stated that we had not yet decided how to address this "double-counting consequence." 549 F.3d 459, 468 (6th Cir. 2008) (citing cases that address the issue in a variety of contexts, including constitutional and statutory ones). But we

7

have also noted that this argument is foreclosed by our precedent. *See United States v. Lockett*, 359 F. App'x 598, 609–10 (6th Cir. 2009) (citing *United States v. Branham*, 97 F.3d 835, 846 (6th Cir. 1996)) (summarizing *Branham* as a case of statutory interpretation of 28 U.S.C. § 994(h)). We save the reconciliation of our published and unpublished case law for another day with the benefit of briefing. Davis does not develop this argument or provide any support for it, and so we do not address it under the doctrine of forfeiture. *United States v. Sandridge*, 385 F.3d 1032, 1035–36 (6th Cir. 2004) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited]." (quoting *Popovich v. Cuyahoga Cty. Court of Common Pleas*, 276 F.3d 808, 823 (6th Cir. 2002) (en banc))).

For these reasons, we conclude that Davis fails to show that the district court committed plain, procedural error.

**B. Substantive Reasonableness.**

A sentence must also be substantively reasonable. "The touchstone for our review is whether the length of the sentence is reasonable in light of the § 3553(a) factors." *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008) (citing *United States v. Cherry*, 487 F.3d 366, 370 (6th Cir. 2007)). A within-Guidelines sentence is presumptively reasonable. *Vonner*, 516 F.3d at 389. It is a "tall order" for a defendant to overcome this presumption. *United States v. Bradley*, 897 F.3d 779, 786 (6th Cir. 2018). We review the substantive reasonableness of the sentence for an abuse of discretion. *United States v. Miller*, 531 F.3d 340, 352 (6th Cir. 2008) (citing *United States v. Carter*, 510 F.3d 593, 600 (6th Cir.2007)). Davis argues that the district court substantively erred by imposing a middle-of-the-range sentence under the Guidelines because it gave too much

weight to his criminal history, as demonstrated by the sentencing discrepancy between Davis and his codefendant Vanover, and failed to weigh appropriately other factors such as national sentencing disparities and certain mitigating factors. Appellant Br. at 30–37. None of these arguments are successful.

First, there is no indication that the district court abused its discretion in how it treated Davis's criminal history. Certainly, the district court found Davis's thirty-year-long criminal history significant, but it also meaningfully considered the other § 3553(a) factors. R. 60 (Sentencing Hr'g Tr. at 23–28) (Page ID #227–32). The court particularly emphasized the seriousness of the instant offense, explaining that Davis participated in a great volume of drug transactions with dangerous consequences. *Id.* at 22 (Page ID #226). The court also considered mitigating factors, such as the fact Davis moved to the area to care for his aging parents and has some education, but ultimately concluded that there was not "much that's particularly aggravating about [Davis's crime] or mitigating, other than what I've already articulated." *Id.* at 26 (Page ID #230). That the district court did not give much weight to the defendant's poor relationship with his father or his age (forty-seven years old) as mitigating factors was not an abuse of discretion, given this statement. *See United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (citing *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006)).

Davis turns to his double-counting argument again, arguing that his criminal history was already accounted for in his Guidelines range without the enhancement of his statutory-maximum sentence and his career-offender status. Appellant Br. at 32–33. Yet the fact remains that § 3553(a) *requires* the district court to consider Davis's criminal history, and Davis has not

demonstrated that the district court in fact gave inordinate weight to that factor. Ultimately, Davis disagrees with the district court's decision to apply the statutory-maximum sentence enhancement under 21 U.S.C. § 851 and the career-offender provision. *See id.* at 33. But Congress has seen fit to provide this statutory enhancement, and "the career-offender guideline is on the books, and 'the mere fact that a sentencing court has the discretion to disagree with the guidelines on policy grounds does not mean that it is required to do so.'" *United States v. Smith*, 881 F.3d 954, 960 (6th Cir. 2018) (quoting *United States v. Ekasala*, 596 F.3d 74, 76 (1st Cir. 2010)).

Davis raises a variety of other arguments, none of which are convincing. First, he argues that his sentence is substantively unreasonable as illustrated by the discrepancy between his sentence and his codefendant's. Appellant Br. at 34 (citing *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007)). Although "[a] district judge . . . *may* exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence . . . [t]hat action, however, would be a discretionary one because the district court is not *required* to consider that type of disparity under § 3553(a)(6)." *Simmons*, 501 F.3d at 624 (emphasis in original) (citations omitted). The district court's decision not to consider Vanover's sentence in fashioning Davis's does not amount to an abuse of discretion.[2]

Davis also argues that the district court did not consider the disparity between his sentence and other similar offenders as his national statistics allegedly demonstrated, Appellant Br. at 34,

---

[2]Vanover was not sentenced until February 19, 2019—three months after Davis. *See* R. 66 (Minute Entry for Vanover Sentencing). Vanover was sentenced to forty-two months of imprisonment and three years of supervised release. R. 67 (J. Vanover at 2–3) (Page ID #304–05). According to Davis, Vanover was not subject to the § 851 enhancement or career-offender status. Appellant Br. at 15.

but as explained above, the court did consider such disparities and ultimately concluded that a Guidelines sentence was the best way to avoid them. *See United States v. Mullet*, 822 F.3d 842, 854 (6th Cir. 2016) (noting that "the point of guidelines is to reduce disparities"); *Houston*, 529 F.3d at 752 (citing *Simmons*, 501 F.3d at 626). We have also stated that a defendant does not rebut the presumption of substantive reasonableness when he demonstrates that the district court did not weigh more heavily nationwide sentencing disparities based on national statistics because "general statistics [ ] cover a multitude of other crimes committed in a multitude of other ways," and so general statistics on their own do not create unwarranted sentencing disparities. *Mullet*, 822 F.3d at 854 (citing *United States v. Waltman*, 529 F. App'x 680, 685 (6th Cir. 2013) (per curiam)). Such is the case here. At sentencing, the only commonalities that defense counsel pointed out between Davis and other career offenders were the Total Offense and Base Offense Levels. R. 60 (Sentencing Hr'g Tr. at 12–15) (Page ID #216–19). This fails to account for the individualized assessment of each defendant and their criminal histories. Therefore, Davis does not rebut the presumption of reasonableness with his proffered statistics.

Finally, Davis contends that the district court erred when it referred to the death of a nineteen-year-old in relation to the seriousness of his crime. Appellant Br. at 35. According to the PSR, Jason Wells died in Vanover's driveway from an overdose of oxymorphone sixteen days before Davis was arrested on state drug charges. PSR at ¶¶ 9–11, 18 (Page ID #151, 153). Davis lived with Vanover and all drug activity captured on the DVR occurred at Vanover's residence. *Id.* at ¶¶ 7–9 (Page ID #150–51). This mention of Wells's death, for which Davis was never

charged, gives us pause because there was no evidence regarding Wells's death besides the PSR.[3]

*See generally Klups*, 514 F.3d at 537–38 (explaining that district court judges "may consider facts that they find [during sentencing] under a preponderance-of-the evidence standard" (quoting *United States v. Mendez*, 498 F.3d 423, 426–27 (6th Cir. 2007) (per curiam))).

However, the circumstances of the district judge's comments indicate that the district court did not abuse its discretion because it considered Wells's death as a consequence of drug activity that generally reflects the seriousness of the instant offense—conspiracy to knowingly and intentionally distribute oxycodone and oxymorphone.

> It may be the case that individually there were not large quantities of drugs, but part of the record includes some surveillance video that was taken. There were a hundred drug transactions . . . .

> And that's an extraordinary amount of activity as it relates to drug crimes.

> Ultimately, you get how serious this is because you know the consequence that is often tragic here. And I mention one name, and that's Jason Wells, age 19. I don't need to say anymore. You face that. You know what happened there.

> You know, you're not—I'm not sentencing you for that death, and I want to make that clear, but I am recognizing, that you get how serious this is. And even in the face of that, on you went, right?

R. 60 (Sentencing Hr'g Tr. at 22–23) (Page ID #226–27). Davis asserts that the district court's mention of Wells's death "clearly had an impermissible impact on his sentencing determination," Appellant Br. at 35, but given the context of those comments, it is not clear what that impact was. Without more, we cannot say that the district court abused its discretion when it mentioned Wells's

---

[3]As previously noted, Davis did not object to the PSR. *Id.* at 34 (Page ID #180).

death to illustrate the seriousness of the offense, conspiracy to distribute certain controlled substances.

Accordingly, Davis fails to rebut the presumption that his within-Guidelines sentence was substantively unreasonable.

## III.  CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's sentence.